NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RICKY LEE JARRETT, *Appellant.*

No. 1 CA-CR 13-0476
FILED 07-29-2014

Appeal from the Superior Court in Maricopa County
No.  CR2012-126225-001
The Honorable Karen A. Mullins, Judge

**CONVICTION AFFIRMED; REMANDED FOR RESENTENCING**

COUNSEL

Arizona Attorney General's Office, Phoenix
By W. Scott Simon
*Counsel for Appellee*

Maricopa County Legal Advocate's Office, Phoenix
By Consuelo M. Ohanesian
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge John C. Gemmill delivered the decision of the Court, in which Judge Andrew W. Gould and Judge Donn Kessler joined.

**G E M M I L L**, Judge:

¶1        Ricky Lee Jarrett appeals his conviction and sentence for second degree murder.  He contends the trial court erred in precluding a defense witness from testifying, and he argues the court erred in failing to instruct the jury on a lesser-included offense of manslaughter.  Jarrett further challenges the court's order sentencing him to twenty-nine years in prison.  For the reasons that follow, we affirm Jarrett's conviction but remand to the superior court for resentencing.

## BACKGROUND

¶2        When JM and his son ("Son") pulled into their home's driveway during the evening of May 17, 2012, Son exited the vehicle and walked past Jarrett, who was JM's friend and had been staying at Jarrett's home.  Son heard JM scream and turned to see Jarrett leaning through the driver side window "punching" JM.  Jarrett fled on foot, and Son ran after him.  When Son approached Jarrett, he observed Jarrett holding a knife.  Son returned home, but JM followed Jarrett in his truck.

¶3        A few minutes later, Son saw a police car drive by in the same direction JM had left.  Son ran in the direction of the police car, and arrived at the location where police officers were gathered.  Son observed his father's truck 315 feet from the home parked in the middle of Durango Street and JM lying on the ground bleeding.  A police officer informed Son that JM had been stabbed, and officers observed a trail of what appeared to be fresh blood on the roadway from the home in the direction of the parked truck.  A crime scene investigator located a folding serrated knife under a dumpster approximately a quarter-mile from the truck, and a detective observed what appeared to be "human tissue" on the knife blade.  Subsequent DNA testing revealed JM's blood was on the knife.  JM was transported to a hospital where he later died.  The medical examiner determined the cause of death was a stab wound to the chest.

¶4        Jarrett testified at trial that he confronted JM about tools JM was supposed to lend him, and he stabbed JM in self-defense after he saw JM grab a pistol in the truck and raise it.  The purported handgun belonged to Son and was an inoperable pellet air gun that Son had, at some point in the past, "used . . . to make . . . [D]efendant and another man think that he had a gun."  Son testified that he did not have the gun with him when he returned home with JM, and he testified JM was not holding a gun during the confrontation with Jarrett.  During the investigation, the only gun police located was the air gun in Son's

bedroom, and they found no evidence that anyone entered the home after the stabbing, nor was any evidence discovered suggesting that JM carried the air gun at any time.

¶5        The jury returned a guilty verdict on the charged offense of second-degree murder, a class one felony.  At the conclusion of the aggravation phase, the jury found the murder was a dangerous offense; the offense caused physical, emotional or financial harm to JM's family; and Jarrett committed the offense while on release from confinement for two prior convictions -- one a class two felony, the other a class three felony -- both of which were dangerous offenses involving Jarrett's use of a deadly weapon.  The court imposed what it believed to be the maximum twenty-nine-year sentence of incarceration.  Jarrett appealed, and we have jurisdiction under the Arizona Constitution Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1), 13–4031 , and –4033(A)(1).

## ANALYSIS

### I.        Witness Preclusion

¶6        Near the end of the State's case in chief, Jarrett disclosed for the first time his intent to introduce evidence that a toxicology examination conducted after JM's autopsy showed JM's blood tested positive for methamphetamine in the amount of .83mg/L.  Defense counsel explained that Jarrett only sought to admit the amount of the drug's concentration in JM's blood.  The State objected on timeliness and relevancy grounds, specifically arguing that Jarrett was not offering any evidence to show how the amount of methamphetamine would have affected JM's behavior.

¶7        The trial court granted the State's motion to preclude the evidence, reasoning that a mere number indicating the methamphetamine concentration in JM's blood was irrelevant to Jarrett's self-defense claim.  The court additionally found that if Jarrett was to call the toxicologist to explain the effect such an amount would have on JM at the time of the offense, Jarrett's untimely disclosure rendered such expert testimony highly prejudicial to the State.

¶8        Jarrett contends the court erred in precluding the evidence of methamphetamine concentration in JM's blood, which Jarrett asserts was essential to his defense.  Jarrett does not dispute that his disclosure was untimely.  Instead, he specifically argues that the court should have conducted a hearing to consider the factors necessary to determine

whether witness preclusion was a proper sanction for his disclosure violation. *See* Ariz. R. Crim. P. 15.7(a) (setting forth non-exclusive list of sanctions available to court to impose for disclosure violations); *State v. Smith*, 140 Ariz. 355, 359, 681 P.2d 1374, 1378 (1984) (referring to "four criteria for determining whether the sanction of preclusion should be imposed: (1) how vital the witness is to the case, (2) whether the opposing party will be surprised, (3) whether the discovery violation was motivated by bad faith, and (4) any other relevant circumstances.") ("*Smith* Factors").

**¶9** As Jarrett concedes, we review for fundamental error because Jarrett failed to assert at trial that such a hearing was required. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005). To obtain relief under fundamental error review, Jarrett has the burden to show that error occurred, the error was fundamental, and he was prejudiced. *See id.* at 567-68, ¶¶ 20-22, 115 P.3d at 607-08.

**¶10** We find no error in the court's preclusion of the toxicology examination evidence without *sua sponte* conducting a hearing. We initially note that Jarrett's characterization of the court's decision as a "sanction" for the untimely disclosure is not supported by the record. The court precluded the evidence primarily because the amount of methamphetamine in JM's body was irrelevant to Jarrett's case. Jarrett affirmed to the court that the amount of methamphetamine in JM's blood was the only evidence he sought to admit. Absent evidence of the *effect* such an amount would have had on JM's actions during the altercation with Jarrett, evidence about merely the methamphetamine concentration in JM's blood would not have aided the jury in determining whether Jarrett may have stabbed JM out of self-defense. *See* Ariz. R. Evid. 402 ("Irrelevant evidence is not admissible."); *State v. Charo,* 156 Ariz. 561, 565, 754 P.2d 288, 292 (1988) (summarily rejecting argument that trial court erred in precluding evidence of drugs in victim's system); *State v. Krantz*, 174 Ariz. 211, 213, 848 P.2d 296, 298 (App. 1992) (affirming a trial court's finding that "absent any showing how the drug had affected the victim," evidence of methamphetamines in the victim was irrelevant). On this basis alone, the court did not abuse its discretion in precluding Jarrett's proffered evidence.[1] *See State v. Amaya-Ruiz*, 166 Ariz. 152, 167, 800 P.2d

---

[1] We reject Jarrett's assertion that the expert's testimony about the effect of methamphetamine was relevant because Jarrett made no offer of proof about the methamphetamine's effect, and neither does the record otherwise indicate what the testimony would have been regarding the

1260, 1275 (1990) ("The trial court has considerable discretion in determining the relevance and admissibility of evidence, and we will not disturb its ruling absent a clear abuse of that discretion.").

¶11          Even if the court's preclusion order could properly be characterized as a sanction for Jarrett's untimely disclosure of the expert evidence, the court did not err in failing to conduct a hearing for purposes of applying the *Smith* Factors to determine the appropriate sanction. Jarrett points to no authority that requires a court to *sua sponte* order such a hearing in the midst of trial.   Further, Jarrett did not make an offer of proof at trial as to how the witness would testify about the effect of methamphetamine on JM's conduct during the altercation with Jarrett. Thus, Jarrett is foreclosed from challenging the trial court's preclusion order.  *See* Ariz. R. Evid. 103(a)(2) (requiring a party to make an offer of proof at trial in order to challenge a trial court's order precluding evidence); *State v. Hernandez*, 232 Ariz. 313, 321, ¶ 37, 305 P.3d 378, 386 (2013).   Moreover, Jarrett did not, as required by Arizona Rule of Criminal Procedure 15.6(d), file a motion seeking leave of the court to extend the time for disclosing the witness and using his testimony at trial. *See* Ariz. R. Crim. P. 15.6(d) (requiring a party who has not disclosed evidence within seven days before trial to obtain leave of the court by motion to extend the time for disclosure and use the evidence at trial)*.*  For these reasons, we conclude the court did not err, much less commit fundamental error, in failing to *sua sponte* conduct a hearing to determine whether preclusion was an appropriate sanction for Jarrett's disclosure violation.

## II.    Jury Instruction:  Lesser-Included Offense

¶12          Although the court instructed the jury on reckless manslaughter as a lesser-included offense of second degree murder, the court did not instruct the jury on the particular form of manslaughter found in A.R.S. § 13-1103(A)(2), which states in relevant part, "A person commits manslaughter by . . . [c]ommitting second degree murder . . . upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim[.]" ("provocation manslaughter").  In explaining its decision to not give the instruction, the court remarked, and the parties agreed, that provocation manslaughter "has different elements" and therefore is not a lesser-included offense of second degree murder.  Jarrett

---

effect, if any, that .83mg/L of methamphetamine would have had on JM's behavior during the confrontation with Jarrett.

argues the failure to include this instruction constitutes fundamental error. We review de novo whether an offense is a lesser included of another offense. *State v. Cheramie*, 218 Ariz. 447, 448, ¶¶ 7–8, 189 P.3d 374, 375 (2008).

¶13 When a defendant in a non-capital case requests a lesser-included offense instruction that is supported by the evidence, the court's failure to include the instruction may amount to fundamental error if the failure to do so impedes the defendant's ability to present his defense. *State v. Valenzuela*, 194 Ariz. 404, 407, ¶ 15, 984 P.2d 12, 15 (1999). Conversely, if a defendant in a non-capital case does not request a lesser-included instruction at trial, "no error may be urged on appeal for the failure of the trial court to give an instruction on a lesser included offense." *State v. Vanderlinden*, 111 Ariz. 378, 380, 530 P.2d 1107, 1109 (1975).

¶14 The record reflects some uncertainty as to whether Jarrett wanted the court to give the provocation manslaughter instruction. During preliminary discussions regarding the jury instructions on manslaughter as a lesser-included offense, and after Jarrett expressed he did not want *any* instruction on lesser-included offenses, the State indicated it did not object to including a provocation manslaughter instruction "if defense wants it in." When questioned by the court, "Do you want it in?" defense counsel stated "Yes." When the court subsequently concluded it would not give the provocation manslaughter instruction based on its reasoning that the offense was not a lesser-included of second degree murder, Jarrett agreed with the court and did not thereafter object to the omission of the instruction. Our review, therefore, is for fundamental error.

¶15 Here, the court erred as a matter of law in concluding provocation manslaughter is not a lesser-included offense of second degree murder. *See Peak v. Acuña*, 203 Ariz. 83, 84-85, ¶ 6, 50 P.3d 833, 834-35 (2002) (referring to "sudden quarrel or heat of passion resulting from adequate provocation by the victim" in A.R.S. § 13-1103(A)(2) not as an element additional to those necessary for a second degree murder conviction, but rather as a "different circumstance"). The question becomes whether the error was "fundamental," in that the error "goes to the foundation of [Defendant's] case, takes away a right that is essential to [Defendant's] defense, and is of such magnitude that [Defendant] could not have received a fair trial." *Henderson*, 210 Ariz. at 568, ¶ 24, 115 P.3d at 608.

**¶16**      Jarrett pursued an "all or nothing" strategy at trial by claiming he acted in self-defense.  It is precisely in deference to such a defense strategy that Arizona law does not require a trial court to *sua sponte* instruct the jury on a lesser-included offense in non-capital homicide cases.  *Vanderlinden*, 111 Ariz. at 379-80, 530 P.2d at 1108-09; *see State v. Gipson*, 229 Ariz. 484, 486,  ¶ 13,  277 P.3d 189, 191 (2012) (explaining former requirement that trial courts instruct on every lesser-included offense supported by the evidence was "abandoned through an amendment to Arizona Rule of Criminal Procedure 21.3(c)."); *see also State v. Krone*, 182 Ariz. 319, 323, 897 P.2d 621, 625 (1995) ("A defendant should not have a lesser included instruction forced upon him.").  Because the record shows that Jarrett adopted an "all or nothing" defense strategy that invited the jury to render a specific verdict on the second-degree murder charge, failing to instruct the jury on provocation manslaughter did not go to the foundation of, or take away a right essential to, Jarrett's self-defense claim, and on this record, Jarrett was not deprived of a fair trial.  Accordingly, the court's legal error in determining provocation manslaughter is not a lesser-included offense of second degree murder was not fundamental, reversible error in this case.

## III.    Sentencing

**¶17**      Jarrett argues the trial court erred in sentencing him to the maximum of twenty-nine years' imprisonment because the statutory revision under which he was sentenced that increased the maximum from twenty-five to twenty-nine years took effect after the date of the offense. The State concedes error and agrees remand is necessary for resentencing.

**¶18**      Jarrett would have been properly sentenced under A.R.S. § 13-710(B) for the second degree murder conviction and under § 13-708(B) because Jarrett committed the offense while on release.  In this case, § 13-708(B) would have permitted the court to increase the maximum sentence in § 13-710(B) by up to twenty-five percent if the court finds at least two substantial statutory aggravating factors.  A.R.S. § 13-708(B).  At the sentencing hearing, however, the trial court stated its belief that it had "no discretion under the law given the fact that Mr. Jarrett was on release and for the crime that [had] been committed."

**¶19**      At the time Jarrett committed the offense, § 13-710(B) provided a mandatory maximum prison term of twenty-five years for those convicted of second degree murder and who had a prior conviction for a class two or three felony conviction involving the use or exhibition of a deadly weapon.  A.R.S. § 13-710(B) (2010).  The legislature amended the

mandatory maximum prison term in § 13-710(B) in 2012, however, from twenty-five to twenty-nine years. 2012 Ariz. Sess. Laws, ch. 207, § 1 (2nd Reg. Sess.). That revision became effective after Jarrett committed the murder in May 2012 but before his sentencing in June 2013. *See Id.* "When the penalty for an offense is prescribed by one law and altered by a subsequent law, the penalty of such second law shall not be inflicted for a breach of the law committed before the second took effect, but the offender shall be punished under the law in force when the offense was committed." A.R.S. § 1-246.

**¶20** On this record, we are unable to determine if the court imposed the twenty-nine year maximum sentence based mistakenly on the revised version of § 13-710(B), or if the court considered § 13-708(B) at all. Accordingly, we remand for the court to sentence Jarrett under the version of § 13-710(B) in effect at the time Jarrett committed the offense and exercise its discretion as appropriate under § 13-708(B). *See State v. Garza*, 192 Ariz. 171, 176, ¶ 17, 962 P.2d 898, 903 (1998) ("Even when the sentence imposed is within the trial judge's authority, if the record is unclear whether the judge knew he had discretion to act otherwise, the case should be remanded for resentencing.").[2]

## CONCLUSION

**¶21** Jarrett's conviction is affirmed, but we remand for resentencing.



Ruth A. Willingham · Clerk of the Court
FILED: gsh

---

[2] Jarrett was ordered to pay the cost of DNA testing pursuant to A.R.S. § 13-610. This court has held that A.R.S. § 13–610 does not authorize trial courts to order that defendants pay DNA testing costs. *State v. Reyes*, 232 Ariz. 468, 472, ¶ 11, 307 P.3d 35, 39 (App. 2013). Thus, Jarrett should not be ordered to pay the cost of DNA testing upon resentencing.