SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| STATE OF ARIZONA, | ) Arizona Supreme Court |
| | ) No. CR-04-0442-PR |
| Appellee, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) No. 1 CA-CR 03-0920 |
| ROBERT ALLEN HENDERSON, | ) |
| | ) Maricopa County |
| Appellant. | ) Superior Court |
| | ) No.  CR-2003-009923-001 DT |
| | ) |
| | ) **O P I N I O N** |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Karen L. O'Connor, Judge
No.  CR-2003-009923-001 DT

**CONVICTION AFFIRMED**

_____

Opinion of the Court of Appeals, Division One
209 Ariz. 300, 100 P.3d 911 (App. 2005)

**AFFIRMED IN PART; VACATED IN PART**

_____

TERRY GODDARD, ATTORNEY GENERAL                          Phoenix
    By   Randall M. Howe, Chief Counsel
         Criminal Appeals Section
         Nicolas D. Acedo, Assistant Attorney General
Attorneys for the State of Arizona

JAMES J. HAAS, MARICOPA COUNTY PUBLIC DEFENDER           Phoenix
    By   Edward F. McGee, Deputy Public Defender
         Attorneys for Robert Allen Henderson

_____

**M c G R E G O R**, Chief Justice

¶1     We granted review to consider whether a reviewing court should consider a claim based upon *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), under a harmless error or a fundamental error standard when the defendant failed to raise the issue at trial. We hold that such claims should be reviewed for fundamental error.

**I.**

¶2     Robert Allen Henderson lived with his 73-year-old mother, Marian Pyle, at her house. During an argument, Henderson assaulted Pyle. The assault continued until Pyle forced Henderson from her bedroom. The next morning, Pyle's daughter arrived and Pyle left her bedroom. When Pyle's daughter left the house, Henderson attacked Pyle again. The attack continued until sheriff's deputies arrived and arrested Henderson. The deputies observed that Pyle had abrasions on her face and nose, a chipped tooth, and cuts and abrasions on her hands. Pyle also complained of back injuries.

¶3     Henderson was indicted on one count of kidnapping, Ariz. Rev. Stat. (A.R.S.) § 13-1304 (2001), one count of assault, A.R.S. § 13-1203 (2001), and one count of threatening or intimidating, A.R.S. § 13-1202 (2001). The jury convicted Henderson of assault and threatening or intimidating. The jury did not convict him of kidnapping, but did find him guilty of

the lesser included offense of unlawful imprisonment, A.R.S. § 13-1303 (2001).

¶4      Pursuant to A.R.S. § 13-702.01.A (2001), the trial judge imposed a "super-aggravated" sentence for the unlawful imprisonment conviction.  Unlawful imprisonment is a class 6 felony that carries a presumptive term of one year.  A.R.S. § 13-701.C.5 (2001).  Section 13-702.A (2001) permits a sentencing court to increase or reduce the presumptive sentence and mandates that any increase or decrease be based on the "aggravating and mitigating circumstances" contained within that same section.  *Id*.  The maximum term that a judge can impose under section 13-702.A for a class 6 felony is 1.5 years.  *Id*.  Section 13-702.01.A, however, provides that a judge can increase the sentence for a class 6 felony to two years, providing that the court "finds [] at least two substantial aggravating factors listed in § 13-702, subsection C."

¶5      The trial court found three aggravating circumstances that fit within the list of statutory aggravators codified in A.R.S. § 13-702.C: infliction or threatened infliction of serious physical injury, § 13-702.C.1; physical and emotional harm caused to the victim, § 13-702.C.9; and that the victim was

3

over the age of sixty-five, § 13-702.C.13.[1]  Henderson did not object either to the fact that the court, not a jury, found the aggravators or to the court's decision to impose a super-aggravated sentence.

¶6      On appeal, Henderson alleged that the trial judge erred by not giving him proper credit for his presentence incarceration and also raised claims related to his Fifth Amendment privilege against self-incrimination.  He did not raise any Sixth Amendment claims.

¶7      After Henderson submitted the case to the court of appeals, the United States Supreme Court issued its opinion in *Blakely v. Washington*, holding that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must

---

[1]     The court did not make explicit references to A.R.S. § 13-702.C when sentencing Henderson.  Rather, the court made the following statement:

> Mr. Henderson, I was here at your trial.  I heard the testimony.  I observed the witnesses testify, and in aggravation I find that the violent nature of the facts of this case are aggravating.  The trauma that you've caused Ms. Pyle and the injuries that you've caused her are aggravating.
>
> I find, in aggravation, Ms. Pyle's age.  I further find in aggravation that you have no remorse whatsoever for any of these offenses.  I find in aggravation your statements that you made to me today.
>
> I don't have to consider the allegations that would have been presented on acts that are unrelated to the crimes that you committed on March 15, 2003 to find that this crime here, all by itself, warrants a super aggravated sentence, and the most I can give you under this crime is two years, and so that's what I'm going to do.

be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at ___, 124 S. Ct. at 2536 (*quoting Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). *Sua sponte*, the court of appeals ordered the parties to file supplemental briefs on the issues of whether *Blakely* applied to Henderson's sentencing and, if so, whether the court should consider any *Blakely* error under a harmless error analysis.

¶8      The court concluded that *Blakely* did apply to Henderson's direct appeal, which was pending at the time *Blakely* was decided. *State v. Henderson*, 209 Ariz. 300, 303 ¶ 9, 100 P.3d 911, 914 (App. 2004). The court also concluded that *Blakely* error constitutes trial error, rather than structural error. *Id*. at 311 ¶ 34, 100 P.3d at 922. The court correctly noted the distinction between the two types of trial error, stating that "trial error to which an objection is made at trial is subject to a harmless error analysis" while "trial error to which no objection is made at trial is subject to a review for fundamental error." *Id*. at 304 ¶ 13, 100 P.3d at 915. The court then applied the harmless error standard from *State v. Ring*, 204 Ariz. 534, 65 P.3d 915 (2003) (*Ring III*), holding that "judicial fact-finding . . . may constitute harmless error if we can conclude beyond a reasonable doubt that no reasonable jury would fail to find the aggravating circumstance." *Henderson*, 209 Ariz. at 311 ¶ 35, 100 P.3d at 922 (citations omitted).

¶9        The State contends that the court erroneously applied the harmless error standard to Henderson's *Blakely* claim, because Henderson had not preserved his objection at trial. Specifically, the State argues that, under the correct fundamental error standard, Henderson must establish not only that fundamental error occurred but also that the error caused prejudice. *See State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984).

¶10       We granted review to determine whether the court of appeals erred in applying a harmless error standard to Henderson's *Blakely* claim. We exercise jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and Rule 31.19 of the Arizona Rules of Criminal Procedure.[2]

**II.**

¶11       The parties no longer dispute several issues considered at earlier stages of this proceeding. First, neither party disputes that the holding of *Blakely* applies to this case. In addition, as the State candidly conceded at oral argument, *Blakely* error clearly occurred. A judge, not a jury, found

---

[2]       Henderson initially contended that this appeal is moot because he has been released from prison. The State conceded that the case is moot, but nonetheless urged us to take review. As a general rule, this Court will not examine moot questions unless they present issues of great public importance or they are likely to recur. *See David G. v. Pollard ex rel. County of Pima*, 207 Ariz. 308, 309 ¶ 6, 86 P.3d 364, 365 (2004). This case meets both criteria.

6

facts that made Henderson eligible for an aggravated sentence and, in doing so, applied a lesser standard of proof than *Blakely* requires. Moreover, Henderson acknowledges that he made no trial objection that could be construed as raising any *Blakely* issue.

**¶12** Finally, Henderson does not challenge the court of appeals' conclusion that *Blakely* error constitutes trial, not structural, error, a conclusion with which we agree. As we held in *Ring III*, there are "relatively few instances in which we should regard error as structural." 204 Ariz. at 552 ¶ 46, 65 P.3d at 933. Structural errors, as opposed to trial errors, are those which "deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for guilt or innocence." *Id.* at ¶ 45 (quoting *Neder v. United States*, 527 U.S. 1, 8-9 (1999) (internal quotations omitted). Additionally, errors are considered structural rather than trial errors when they "affect the 'entire conduct of the trial from beginning to end,'" and thus taint "'the framework within which the trial proceeds.'" *State v. Anderson*, 197 Ariz. 314, 323 ¶ 22, 4 P.3d 369, 378 (2000) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 307-08, 309-10 (1991)). We previously have held that we will analyze *Apprendi* error as trial error,

7

rather than as structural error.[3]  *See State v. Sepahi*, 206 Ariz. 321, 324 n.3, ¶ 19, 78 P.3d 732, 735 n.3 (2003); *see also Ring III*, 204 Ariz. at 555 ¶ 53, 65 P.3d at 936.  In *Ring III,* we held that, in the capital context, "Arizona's failure to submit [aggravating factors] to the jury does not constitute structural error."  *Id*. at 552 ¶ 44, 65 P.3d at 933.  We have been asked to revisit this question on several occasions and have declined to do so.  *See, e.g., State v. Murdaugh*, 209 Ariz. 19, 30 ¶ 50, 97 P.3d 844, 855 (2004); *State v. Montaño*, 206 Ariz. 296, 297 ¶ 3, 77 P.3d 1246, 1247 (2003); *State v. Sansing*, 206 Ariz. 232, 235 ¶ 5, 77 P.3d 30, 33 (2003).

---

[3]  Every federal circuit court of appeals has also held that *Apprendi* error may be reviewed as trial error.  *E.g., United States v. Perez-Ruiz,* 353 F.3d 1, 17 (1st Cir. 2003) ("An *Apprendi* error is not a 'defect affecting the framework within which the trial proceeds,' but, rather, 'simply an error in the trial process itself.'") (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)); *United States v. Friedman*, 300 F.3d 111, 127-28 (2d Cir. 2002) (subjecting an alleged *Apprendi* error to harmless error review); *United States v. Henry*, 282 F.3d 242, 252 (3d Cir. 2002) (same); *United States v. Strickland*, 245 F.3d 368, 379-80 (4th Cir. 2001) (evaluating *Apprendi* claim under plain error doctrine); *United States v. Matthews*, 312 F.3d 652, 665 (5th Cir. 2002) (holding that *Apprendi* error is susceptible to harmless error review); *United States v. Stewart*, 306 F.3d 295, 322-23 (6th Cir. 2002) (same); *United States v. Trennell*, 290 F.3d 881, 890 (7th Cir. 2002) (holding *Apprendi* error harmless); *United States v. Frazier*, 280 F.3d 835, 855-56 (8th Cir. 2002) (evaluating *Apprendi* claim under plain error doctrine); *United States v. Velasco-Heredia*, 319 F.3d 1080, 1085-86 (9th Cir. 2003) (applying harmless error analysis); *United States v. Lott*, 310 F.3d 1231, 1240 (10th Cir. 2002) (applying plain error analysis to *Apprendi* claim); *United States v. Suarez*, 313 F.3d 1287, 1293 (11th Cir. 2002) (holding *Apprendi* error harmless); *United States v. Lafayette*, 337 F.3d 1043, 1052 (D.C. Cir. 2003) (same).

¶13    *Ring III* however, considered only the Sixth Amendment violation caused by submitting factual questions legally essential to expose a defendant to a maximum sentence to the wrong factfinder. The aggravating facts used to enhance Henderson's sentence were found by a judge instead of by a jury. As we held in *Ring III*, that procedure violated Henderson's Sixth Amendment right to a jury trial. *See* 204 Ariz. at 545 ¶ 12, 65 P.3d at 926; *see also Apprendi*, 530 U.S. at 490. In addition, however, the trial judge here applied a preponderance standard to find the aggravators, rather than the constitutionally required standard of beyond a reasonable doubt. This procedure violated the Fifth Amendment. *See, e.g., In re Winship*, 397 U.S. 358, 364 (1970) (holding that Due Process Clause of the Fifth Amendment puts the burden on the prosecution to prove all elements of all charges beyond a reasonable doubt).

¶14    Before the court of appeals, Henderson relied primarily upon *Sullivan v. Louisiana*, 508 U.S. 275 (1993), in arguing that the failure to apply the proper standard of proof to the determination of aggravating factors legally essential to his punishment constitutes structural error requiring automatic reversal. In *Sullivan*, the United States Supreme Court held that submitting a case to a jury under a constitutionally deficient reasonable doubt instruction "vitiate[d] *all* the jury's findings" because the jury had returned no verdict of

guilty beyond a reasonable doubt. *Id.* at 281. Because no actual jury verdict exists in such cases upon which the harmless-error scrutiny can operate, the Court concluded, the error "unquestionably qualifies as 'structural error.'" *Id.* at 282.

¶15     The defendant in *Neder v. United States*, 527 U.S. 1 (1999), sought to expand the *Sullivan* holding to a situation in which the judge failed to submit one element of the charged offense to the jury. Neder argued that the failure to submit an element to the jury "prevent[ed] the jury from rendering a 'complete verdict' on *every* element of the offense" and that the error therefore could not be reviewed for harmless error under Federal Rule of Criminal Procedure 52(a). *Id.* at 11. Recognizing that part of the analysis in *Sullivan* appeared to support Neder's argument, the Court concluded that "this strand of the reasoning in *Sullivan* . . . cannot be squared with our harmless-error cases." *Id.* Citing numerous cases, the Court held that the absence of a "complete verdict" does not necessarily preclude application of the harmless-error analysis. *See id.* at 11-12 (citing cases). Thus, because "an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence," *id*. at 9, the Court applied a harmless error analysis.

¶16      Recently, in *Mitchell v. Esparza*, 540 U.S. 12 (2003), the Court reiterated the critical distinction between the errors considered in *Neder* and in *Sullivan*:  The error in *Sullivan* invalidated *all* of the jury's findings*,* while the error in *Neder* impacted only the finding of a single element.  *Id*. at 16. When, as occurred in *Neder*, a jury is "precluded from determining only one element of an offense, . . . harmless-error review is feasible."  *Id.*[4]

¶17      As the court of appeals correctly noted, the *Blakely* error in this case much more closely resembles the error in *Neder* than that found in *Sullivan*.  *Henderson,* 209 Ariz. at 309 ¶ 29, 100 P.3d at 920.  Because a factual finding that is legally essential to expose a defendant to a maximum sentence operates as the "functional equivalent of an element," *Apprendi*, 530 U.S. at 494 n.19, a judge's failure to ask a jury to find aggravating factors beyond a reasonable doubt is equivalent to the failure to require a jury to find every element of an offense.  Like the errors in *Neder* and *Mitchell*, *Blakely* error

---

[4]   Justice Stevens' dissent to *United States v. Booker* similarly recognizes that not all judicial factfinding related to sentencing violates constitutional guarantees:  "[J]udicial factfinding to support an offense level or an enhancement is only unconstitutional when that finding raises the sentence beyond the sentence that could have lawfully been imposed by reference to facts found by the jury or admitted by the defendant."  125 S. Ct. 738, 775 (2005) (Stevens, J., dissenting in part) (emphasis omitted).

11

does not infect the entire trial process. Therefore, it does not constitute structural error and may be reviewed using a trial error analysis. The question remaining is whether a reviewing court should consider *Blakely* claims such as that involved here under a fundamental error or a harmless error standard.

## A.

¶18 Reviewing courts consider alleged trial error under the harmless error standard when a defendant objects at trial and thereby preserves an issue for appeal. *See State v. Totress*, 107 Ariz. 18, 20, 480 P.2d 668, 670 (1971) (holding that without claim of error at trial, claim is waived); *see also State v. Hardwick*, 183 Ariz. 649, 653, 905 P.2d 1384, 1388 (App. 1995) (holding that because trial court incorrectly allowed inadmissible evidence over objection, review was for harmless error). Harmless error review places the burden on the state to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence. *See State v. Bible*, 175 Ariz. 549, 588, 858 P.2d, 1152, 1191 (1993).

¶19 Fundamental error review, in contrast, applies when a defendant fails to object to alleged trial error. *Id.* at 572, 858 P.2d at 1175 (holding that only fundamental error may be raised for the first time on appeal). The scope of review for fundamental error is limited. A defendant who fails to object

12

at trial forfeits the right to obtain appellate relief except in those rare cases that involve "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *Hunter*, 142 Ariz. at 90, 688 P.2d at 982; *see also State v. Gendron*, 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991) (holding that fundamental error is that which is "clear, egregious and curable only via a new trial"). In addition, we place the burden of persuasion in fundamental error review on the defendant. We impose this additional limitation upon obtaining relief for fundamental error to discourage a defendant from "tak[ing] his chances on a favorable verdict, reserving the 'hole card' of a later appeal on [a] matter that was curable at trial, and then seek[ing] appellate reversal." *State v. Valdez*, 160 Ariz. 9, 13-14, 770 P.2d 313, 317-18 (1989).

¶20      To prevail under this standard of review, a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice. *See Gendron*, 168 Ariz. at 155, 812 P.2d at 628; *see also Hunter*, 142 Ariz. at 90, 688 P.2d at 982 (holding that defendant must prove fundamental error exists, *and* is of such magnitude that he could not have received a fair trial); *State v. King*, 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988) (holding that after determining that error occurred,

13

a court must evaluate the prejudicial nature of the error).  Our requirements for establishing a right to relief for fundamental error are not unique.  Other jurisdictions that apply fundamental error review also have held that a defendant must establish prejudice to qualify for relief under that standard of review.  *See, e.g., Reed v. State*, 837 So. 2d 366, 370 (Fla. 2002) (holding that for error to be fundamental it must follow that the error prejudiced the defendant); *Corcoran v. State*, 739 N.E.2d 649, 655 (Ind. 2000) (holding that for fundamental error to exist, court "must find that [the error] so prejudiced the defendant's rights as to make a fair trial impossible."); *In re Harris*, 671 A.2d 1278, 1279 (Vt. 1995) (holding that petitioner must establish fundamental error and that such error prejudiced him to prevail).

¶21    We note that prior appellate decisions have not consistently described the showing necessary to establish fundamental error.  *Compare King*, 158 Ariz. at 424, 763 P.2d at 244 (holding that error is fundamental if it *may* have contributed to the verdict), *with State v. Thomas*, 130 Ariz. 432, 436, 636 P.2d 1214, 1218 (1981) (holding that error is not fundamental if it did not "contribute significantly" to the verdict).  Our decision in *Ring III* also may have contributed to the confusion on this issue.  In that decision, this Court and counsel agreed that we should address a number of issues,

14

including whether we should review *Ring II* error as structural or harmless error. *Ring III*, 204 Ariz. at 544 ¶ 6, 552 ¶ 44, 65 P.3d at 925, 933. The parties did not brief, and this Court did not consider, whether we should apply the fundamental error standard rather than the harmless error standard. We granted review in this case in part to dispel any confusion created by prior decisions. To the extent that any prior decisions are inconsistent with today's holding, we disapprove of them.

¶22 We review the *Blakely* error that occurred here under a fundamental error standard because Henderson did not object at trial. Hence, Henderson, not the State, bears the burden of establishing both that fundamental error occurred and that the error caused him prejudice.

### III.

### A.

¶23 To obtain relief under the fundamental error standard of review, Henderson must first prove error. As previously noted, the State concedes that *Apprendi/Blakely* error occurred.

¶24 Because the parties concede that error occurred, we next consider whether this error was fundamental. To establish fundamental error, Henderson must show that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he

15

could not have received a fair trial. *Hunter*, 142 Ariz. at 90, 688 P.2d at 982.

¶25    In this case, as previously noted, error exists on two levels. First, the aggravating facts used to enhance Henderson's sentence were found by a judge instead of a jury, violating Henderson's Sixth Amendment right to a jury trial. *See Apprendi*, 530 U.S. at 490. In addition, the trial judge applied a preponderance standard, not the constitutionally required standard of beyond a reasonable doubt, violating Henderson's Fifth Amendment rights. *See Winship*, 397 U.S. at 364. We have found similar error to constitute fundamental error. *See, e.g., Hunter*, 142 Ariz. at 90, 688 P.2d at 982 (1984) (holding that improper burden shifting to a defendant constitutes fundamental error); *State v. Johnson*, 173 Ariz. 274, 276, 842 P.2d 1287, 1289 (1992) (same). Indeed, it is difficult to conceive that use of a procedure that denied rights guaranteed both by the Fifth and by the Sixth Amendments to the United States Constitution could be other than fundamental error. Because the sentencing procedure followed denied Henderson the right to have certain facts decided by a jury beyond a reasonable doubt, we conclude that the procedure utilized went to the foundation of Henderson's case. We therefore hold that fundamental error occurred.

16

¶26     Having shown that fundamental error occurred, Henderson must demonstrate that the error caused him prejudice. Fundamental error review involves a fact-intensive inquiry, and the showing required to establish prejudice therefore differs from case to case. *Bible*, 175 Ariz. at 572, 858 P.2d at 1175; *see also State v. Allen*, 157 Ariz. 165, 171-72, 755 P.2d 1153, 1159-60 (1988).  The showing a defendant must make varies, depending upon the type of error that occurred and the facts of a particular case. *See State v. Dann*, 205 Ariz. 557, 572 ¶ 57, 74 P.3d 231, 246 (2003) (holding that defendant claiming error in being excluded from pretrial conferences must establish a right to attend those conferences and show his trial was prejudiced through his absence); *Bible*, 175 Ariz. at 572, 858 P.2d at 1175 (holding that in a case in which *voir dire* error is claimed, defendant must show how court should have conducted *voir dire* and how absence of such procedure prejudiced him); *Hunter*, 142 Ariz. at 90, 688 P.2d at 982 (holding that defendant must demonstrate how faulty jury instruction prejudiced him).

¶27     Because the nature of the error involved here deprived Henderson of the opportunity to require that a jury find facts sufficient to expose him to an aggravated sentence, Henderson must show that a reasonable jury, applying the appropriate

17

standard of proof, could have reached a different result than did the trial judge.

¶28     Whether a defendant can make that showing depends upon the facts of his particular case.  In some cases, no *Blakely* error will have occurred because the factual finding or findings necessary to expose a defendant to an aggravated sentence will fall outside the *Apprendi/Blakely* analysis, will be implicit in the jury verdict, or will have been admitted by the defendant.  In other cases, no *Blakely* error will occur because a jury, applying the beyond a reasonable doubt standard, will find those facts legally essential to expose a defendant to a defined sentencing range.  The Sixth Amendment then allows a judge to find additional facts by a preponderance of the evidence, as long as the sentence imposed does not fall outside the statutorily prescribed sentencing range.  *State v. Martinez*, ___ Ariz. ___ ¶¶ 26-27, ___ P.3d ___ (2005).  In this case, some of the statutory aggravators legally essential to Henderson's punishment were found by the trial court.  We review for fundamental error to determine whether a reasonable jury, applying the correct standard of proof, could have failed to find the existence of each aggravator.  If we find that a reasonable jury applying the correct standard of proof could have reached a different conclusion than did the trial judge as to any or all aggravators, we must then consider whether at

18

least two aggravators not subject to such a conclusion remain to sustain the defendant's super-aggravated sentence. *See* A.R.S. § 13-702.01 (requiring finding of two substantial aggravators for super-aggravated sentence). If not, the defendant has made an adequate showing of prejudice.

¶29     We consider the C.1 and C.9 aggravators together, as did the court of appeals. *Henderson*, 209 Ariz. at 311 ¶ 37, 100 P.3d at 922. Section C.1 requires infliction or threatened infliction of serious physical injury, and C.9 assumes physical and emotional harm caused to the victim.

¶30     The fact that the jury found Henderson not guilty of kidnapping under A.R.S. § 13-1304 strongly supports his argument that a jury could have reached a different conclusion as to these aggravators than did the judge. The difference between the kidnapping charge and unlawful imprisonment, A.R.S. § 13-1303, the lesser charge of which the jury convicted Henderson, is that the jury could have convicted Henderson of kidnapping only if it found, beyond a reasonable doubt, that Henderson intended to inflict serious injury upon his victim. *See* A.R.S. § 13-1304.A.3. Unlawful imprisonment, in contrast, does not include violence as an element. By convicting Henderson of unlawful imprisonment rather than kidnapping, the jury arguably distinguished between the crimes on the basis of violence, the only element the two crimes do not share.

19

¶31    In aggravating Henderson's sentence for unlawful imprisonment, however, the trial judge found that the crime was of a violent nature and that the victim suffered trauma and injuries. *Blakely* involved a similar circumstance. There, the defendant pled guilty to second-degree kidnapping. 542 U.S. at ___, 124 S. Ct. at 2534. The trial judge then found that the defendant had acted with deliberate cruelty and aggravated his sentence. *Id*. at ___, 124 S. Ct. at 2535-36. The Supreme Court noted that the aggravating factor of deliberate cruelty was essentially the same as the element that separated second-degree kidnapping from first-degree kidnapping, the charge that the defendant pled guilty to avoid. *Id*. at ___, 124 S. Ct. at 2539. Thus, Blakely was exposed to the sentence for which he would have been eligible had the jury actually convicted him of the greater crime. *Id*.

¶32    A similar situation occurred here. By finding the presence of the C.1 and C.9 aggravators, the trial judge made a finding at least arguably contrary to the facts found by the jury. Given the jury's failure to convict Henderson of kidnapping, we conclude that a reasonable jury, applying the correct burden of proof of beyond a reasonable doubt, could have found differently than did the trial judge as to the C.1 and C.9 aggravators.

¶33    The trial judge also found the existence of a third aggravating factor listed in section 13-702, that Henderson's victim was over the age of sixty-five.  A.R.S. § 13-702.C.13. This fact was not disputed; no reasonable jury could have failed to find the existence of this aggravator beyond a reasonable doubt.

¶34    Section 13-702.01, however, requires that a trial judge find the existence of at least two substantial aggravators under section 13-702.C.  Because the victim's age, by itself, could not expose Henderson to the super-aggravated sentence of section 13-702.01, Henderson has demonstrated that the fundamental error in his case caused him prejudice.

¶35    Normally, in such a situation, we would remand this case to the superior court for re-sentencing.  Because Henderson has been released from prison and has finished his term of community supervision, however, remand is no longer appropriate.

## IV.

¶36    For the foregoing reasons, the opinion of the court of appeals is vacated in part and affirmed in part.  The superior

court conviction is affirmed.

_____

Ruth V. McGregor, Chief Justice

CONCURRING:


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice


_____
Charles E. Jones, Justice (Retired)


**H U R W I T Z**, Justice, concurring

¶37      Were we writing on a clean slate, I would conclude that all *Apprendi* error is structural, for the reasons explained by Justices Jones and Feldman in their separate opinions in *Ring III* and its progeny.  *See, e.g., State v. Ring*, 204 Ariz. 534, 565-67 ¶¶ 105-114, 65 P.3d 915, 946-48 (2003) ("*Ring III*") (Feldman, J., concurring in part, dissenting in part); *State v. Sansing*, 206 Ariz. 232, 241-42 ¶¶ 40-46, 77 P.3d 30, 39-40 (2003) (Jones, C.J., dissenting); *State v. Armstrong*, 208 Ariz. 360, 366-68 ¶¶ 25-37, 93 P.3d 1076, 1082-84 (2004) (Jones, C.J.,

22

concurring in part, dissenting in part). But this Court resolved that issue to the contrary in *Ring III*.[5] Moreover, the Supreme Court of the United States, although in a different factual context, arguably has reached the same conclusion, stating that "[w]here the jury was precluded from determining only one element of an offense . . . harmless-error review is feasible." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). Therefore, albeit not without reservations, I join that portion of the Court's opinion concluding that *Blakely* error is not structural.

**¶38** I join the balance of the Court's opinion unreservedly. It is perhaps worth noting, however, that the fundamental error test for prejudice we adopt today — whether any reasonable jury could have disagreed about the presence of an aggravating factor, *see supra* ¶ 27 — is for practical purposes no different than the harmless error test adopted in *Ring III*. *See Armstrong*, 208 Ariz. at 362 ¶ 6, 93 P.3d at 1078 ("[J]udicial fact-finding . . . may constitute harmless error if

---

[5] As the Court correctly notes, *see supra* ¶ 13, there is a difference between *Ring* error and *Blakely* error. *Ring* error involves a deprivation only of Sixth Amendment rights; *Blakely* error violates both the Fifth and Sixth Amendments. *See id.* Nonetheless, given the holding in *Ring III* that the denial of a defendant's right to a jury finding of aggravating factors can be harmless in a case in which a defendant is sentenced to death, it would beggar reason to arrive at a different conclusion when the consequence of the judge's factual finding is merely an additional term of years.

we can conclude beyond a reasonable doubt that no reasonable jury would fail to find the aggravating circumstance.") (citing *Ring III*, 204 Ariz. at 555, 565 ¶¶ 53, 103, 65 P.3d at 936, 946).

¶39     The major conceptual difference is that under fundamental error analysis, the defendant bears the burden of proving prejudice, while under harmless error analysis, the burden is on the State.[6]   In practice, however, because a reviewing appellate court will virtually never be in equipoise about the issue, the burden of proof is of little consequence. In both instances, the reviewing court's analysis will be substantively identical — it must determine whether a reasonable jury could have concluded differently than the sentencing judge as to the relevant aggravating factor.    As the Court convincingly demonstrates, a reasonable jury could have reached

---

[6]    An appellate court may find fundamental error even if the issue is not raised on appeal by a defendant. *See United States v. Atkinson*, 297 U.S. 157, 160 (1936) ("In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings."); *State v. Curry*, 187 Ariz. 623, 626-27, 931 P.2d 1133, 1136-37 (App. 1996) (citing *Atkinson*); *State v. Taylor*, 187 Ariz. 567, 571-72, 931 P.2d 1077, 1081-82 (App. 1996) (same).   In such cases, it is somewhat misleading to speak of burden of proof.   In cases where there is any doubt as to whether an error not addressed in the defendant's brief is prejudicial, an appellate court raising the issue *sua sponte* should ask for supplemental briefing, thus allowing the defendant to discharge the burden the Court today identifies.

a different conclusion than the sentencing judge in the case before us, and Henderson has therefore demonstrated the prejudice required to establish fundamental error.

_____
Andrew D. Hurwitz, Justice