NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

RODRIGO ROMERO JR., *Appellant.*

No. 1 CA-CR 13-0263
FILED 07-29-2014

---

Appeal from the Superior Court in Maricopa County
No. CR2010-137340-002
The Honorable Joseph C. Kreamer, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Chief Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Patricia K. Norris joined.

_____

**J O H N S E N**:

¶1        Rodrigo Romero Jr. was convicted of one count each of first-degree murder, conspiracy to commit drive-by shooting, drive-by shooting, and assisting a criminal street gang; seven counts of aggravated assault; and several other charges, all arising from his involvement in a 2006 drive-by shooting in Chandler.  The superior court imposed a sentence of natural life in prison for the first-degree murder, followed by consecutive sentences totaling 102 years.  Romero filed a timely notice of appeal.  We have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(2) (2014), 13-4031 (2014) and -4033(A) (2014).[1]  For the reasons that follow, we affirm the convictions and resulting sentences.

**DISCUSSION**

¶2        Romero argues the prosecutor engaged in repeated misconduct during the trial.  Because Romero failed to object to any of the claimed misconduct at trial, he bears the burden of establishing that the prosecutor engaged in misconduct, that the misconduct constituted fundamental error, and that the misconduct caused him prejudice.  *See State v. Henderson,* 210 Ariz. 561, 568, ¶ 22, 115 P.3d 601, 608 (2005).  Error is fundamental when it goes to the foundation of a defendant's case, takes from him a right essential to his defense, and is error of such magnitude that he could not possibly have received a fair trial.  *Id.* at 567, ¶ 19, 115 P.3d at 607.  To prove prejudice, a defendant must show that a reasonable jury or judge could have reached a different result absent the error.  *Id.* at 569, ¶ 27, 115 P.3d at 609.

¶3        "[P]rosecutorial misconduct 'is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a

_____

[1]        Absent material revision after the date of the alleged offense, we cite a statute's current version.

whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial.'" *State v. Aguilar*, 217 Ariz. 235, 238-39, ¶ 11, 172 P.3d 423, 426-27 (App. 2007) (quoting *Pool v. Superior Ct. in and for Pima County*, 139 Ariz. 98, 108-09, 677 P.2d 261, 271-72 (1984)). To determine whether a prosecutor's remarks are improper, we consider whether the remarks called to the attention of jurors matters they would not be justified in considering, and the probability, under the circumstances, that the jurors were influenced by the remarks. *State v. Jones*, 197 Ariz. 290, 305, ¶ 37, 4 P.3d 345, 360 (2000).

**¶4** "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335, ¶ 46, 160 P.3d 203, 214 (2007) (citation and internal punctuation omitted). "The misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Id.* "Prosecutorial misconduct constitutes reversible error only if (1) misconduct exists and (2) 'a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial.'" *Id.*

**¶5** Romero argues first that the prosecutor engaged in misconduct in his opening statement when he contrasted the dress clothes Romero was wearing at trial with the hooded sweatshirt he wore during the drive-by shooting, and by eliciting testimony from a police detective that the gang tattoo on Romero's forearm was not visible at trial because it was covered by his shirt. Romero concedes that what he wore during the drive-by shooting was relevant evidence. The gang tattoo on his forearm also was relevant to the charge of assisting a criminal street gang, as well as to provide a motive for the remaining charges. In this context, the prosecutor's brief references to the clothing Romero wore at trial did not improperly influence the jurors. *See State v. Dunlap*, 187 Ariz. 441, 462-63, 930 P.2d 518, 539-40 (App. 1996) (court will not assume prosecutor intended the most sinister meaning of ambiguous remark).

**¶6** Nor was fundamental error present in the prosecutor's questions eliciting testimony concerning Romero's lack of nervousness at trial or in the prosecutor's statements during closing argument suggesting that Romero was likewise "bold" after the shooting, or in the prosecutor's reference in closing to Romero staring at one of the witnesses in court.

¶7            Defense counsel cross-examined one of the investigating officers about Romero's demeanor as he was questioned after the shooting; the officer testified Romero did not seem "particularly nervous" or anxious.   Shortly thereafter, the prosecutor asked another officer whether Romero looked nervous as he sat in court watching the proceedings.  Then, during closing argument, defense counsel recalled the testimony about Romero's demeanor after the incident, arguing a guilty person would not be found calmly walking nearby the crime scene.  In rebuttal, the prosecutor argued that Romero acted with bravado after the crime, and observed that Romero similarly was "not nervous" in court.

¶8            Romero cites *State v. Payne*, 233 Ariz. 484, 314 P.3d 1239 (2013), a decision issued after he was tried, in which our supreme court urged prosecutors to proceed cautiously when asking "jurors to consider a defendant's affect at trial . . . given its dubious relevance and potential to implicate a defendant's right not to testify."  *Id.* at 514-15, ¶¶ 130-31, 314 P.3d at 1269-70.  The court declined "to set forth an absolute rule that such statements are always improper, however, preferring to let trial courts assess the totality of the circumstances in each case."  *Id.* at 515, ¶ 131, 314 P.3d at 1270.  In *Payne*, a capital case, the court concluded the prosecutor's closing argument contrasting the defendant's lack of emotion at trial with the excessive emotion he displayed during his interrogation was improper, but did not constitute fundamental error.  *Id*.

¶9            Romero cites cases from other jurisdictions reversing convictions because of comments that may have caused jurors to rely on improper character evidence or evidence outside the record, and impinged on the defendant's right not to testify.  *See United States v. Schuler*, 813 F.2d 978, 979-81 (9th Cir. 1987) (prosecutor commented in closing that nontestifying defendant's laughter during witness's testimony demonstrated lack of remorse); *United States v. Pearson,* 746 F.2d 787, 796 (11th Cir. 1984) (prosecutor argued that nontestifying defendant appeared nervous and afraid at trial); *United States v. Carroll*, 678 F.2d 1208, 1209-10 (4th Cir. 1982) (prosecutor argued that nontestifying defendant's courtroom behavior indicated he was more familiar than his attorney with surveillance photos, demonstrating he was present at the scene of the crime); *Bryant v. State*, 741 A.2d 495, 498-502 (Md. Ct. Spec. App. 1999) (prosecutor argued "we all saw" nontestifying defendant's inability to look witness in the eye, asserting that meant defendant "knew [witness] was telling the truth"); *Bowser v. State*, 816 S.W.2d 518, 521-24 (Tex. Ct. App. 1991) (prosecutor argued nontestifying defendant's passive demeanor at trial showed lack of compassion).

¶10            In each of the cases Romero cites, however, the prosecutor's remarks were so extreme that they drew objections from defense counsel. Here, in contrast, the prosecutor's remarks were not egregious enough to cause Romero to object to them during trial. We conclude the prosecutor's eliciting testimony about Romero's lack of nervousness at trial and comparing it to Romero's "bold" conduct after the drive-by shooting was improper but did not rise to the level of fundamental, reversible error.

¶11            Romero also argues that during closing argument, the prosecutor said he had stared at a witness as she testified. The record contains nothing to inform us about whether, in fact, Romero was staring at the witness or the manner in which he may have been doing so. That being said, we do not construe the prosecutor's comment to imply that Romero was guilty. The prosecutor made the comment in urging the jury to believe an account the witness had given during a private interview to detectives, rather than the account the witness gave in court. ("If you believe [the witness] before the defendant was staring at her, before the gallery was full when she testified, when she was talking to [a detective] after 2009, if you believe her, this case is proven start to finish.").

¶12            In all, we are not persuaded that the prosecutor's references to Romero's nontestifying demeanor were intentionally improper, *see Aguilar*, 217 Ariz. at 238-39, ¶ 11, 172 P.3d at 426-27, or so pervasive that they deprived Romero of a fair trial, as necessary to reverse on this basis. *See Morris*, 215 Ariz. at 335, ¶ 46, 160 P.3d at 214. Nor are we convinced that, absent the purported misconduct, a reasonable jury could have reached a different verdict, as necessary to show prejudice on fundamental error review. *Henderson,* 210 Ariz. at 569, ¶ 27, 115 P.3d at 609.

¶13            Romero also argues the prosecutor engaged in improper *ad hominem* attacks on defense counsel. Although it is improper for a prosecutor to attack the integrity of defense counsel, it is not improper to tell the jury that the defense's theory of the case confuses the issues or is misleading. *See State v. Hughes,* 193 Ariz. 72, 86, ¶ 59, 969 P.2d 1184, 1198 (1998) ("Jury argument that impugns the integrity or honesty of opposing counsel is . . . improper."); *United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997) ("Criticism of defense theories and tactics is a proper subject of closing argument").

¶14            Romero asserts the prosecutor improperly argued that defense counsel "tried to make up" benefits a witness received for her testimony, argued outside the record, and would call a witness who could

not remember every minor detail a liar. In each cited instance, the prosecutor was asserting that defense counsel was trying a strategy that clearly failed. This attack on defense counsel's strategies was not improper. *See State v. Amaya-Ruiz,* 166 Ariz. 152, 171-72, 800 P.2d 1260, 1279-80 (1990) (prosecutor's arguments that defense counsel "blind-sided witnesses," created a "smoke screen," and relied on "innuendo and inference" to support her "outrageous" argument was "not improper . . . and certainly did not rise to the level of fundamental error.").

¶15　　　Nor did the prosecutor's remarks in closing argument that he was "tired of the so-called monopoly that defendants get on getting this case right" and that the defendant did not "get to lecture parents who bury children about sympathy" constitute fundamental, reversible error. Although the prosecutor's comments were improper as an appeal to the jurors' sympathy for the parents of the murder victim, when viewed in context they did not rise to the level of fundamental prejudicial error. The prosecutor's principal point was that the State had presented what he referred to as a "mountain of evidence" and that its case did not rest on sympathy and the jury should not decide the case based on sympathy: "Go over your notes. Look at everything but please don't reduce this down to sympathy . . . ."

¶16　　　We also disagree with Romero's contention that the State "blatantly ignor[ed] the ruling of the trial court" sustaining an objection to an inquiry on the gang affiliation of an acquaintance, by attempting to elicit adequate foundation and then asking the question again in a different way. The prosecutor's belief that he had elicited the necessary foundation to re-ask the question was not unreasonable.

¶17　　　Finally, reversal is not required by the cumulative effect of the alleged misconduct. *See Gallardo,* 225 Ariz. at 568, 569-70, ¶¶ 35, 45-46, 242 P.3d at 167, 168-69. The vast majority of the claimed incidents of misconduct were not improper, in light of the "wide latitude" prosecutors are given during closing argument. *See Jones,* 197 Ariz. at 305, ¶ 37, 4 P.3d at 360. Although we have concluded that the prosecutor did engage in isolated instances of improper conduct, we do not view even these missteps as constituting intentional misconduct with indifference to the prejudice caused. *See State v. Gallardo,* 225 Ariz. 560, 568, ¶ 35, 242 P.3d 159, 167. On this record, we conclude that the alleged instances of prosecutorial misconduct, even considered cumulatively, did not constitute fundamental, prejudicial error.

**CONCLUSION**

**¶18**      For the foregoing reasons, we affirm Romero's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: gsh