NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GABRIEL JOHN SANCHEZ, *Appellant.*

No. 1 CA-CR 13-0920
FILED 3-24-15

Appeal from the Superior Court in Maricopa County
No.  CR2011-008279-001
The Honorable Roland J. Steinle, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Office of the Legal Advocate, Phoenix
By Sara Xochitl Orozco, Frances J. Gray
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Patricia K. Norris delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Randall M. Howe joined.

**N O R R I S**, Judge:

**¶1**　　　　Gabriel John Sanchez appeals his convictions and sentences for first-degree murder and related charges, arguing the superior court should have excluded improper opinion evidence, was biased, and imposed an illegal sentence for his conviction for first-degree murder.　We disagree with each argument and affirm his convictions and sentences.

## FACTS AND PROCEDURAL BACKGROUND[1]

**¶2**　　　　At trial, the State presented substantial evidence Sanchez shot and killed the victim, Angel, in the doorway of Sanchez's estranged wife's house.　Sanchez then threatened at gunpoint others at the house who had witnessed him approach the house, heard the gunshot, and saw Angel lying dead on the floor.　Sanchez's sister helped Sanchez put Angel's body in the trunk of her car and then drove Sanchez to the Salt River Pima Maricopa Indian Reservation, where he left Angel's body.

**¶3**　　　　The jury found Sanchez guilty of premeditated murder, aggravated assault, and other related charges.　The superior court sentenced Sanchez to natural life for the first-degree murder.

## DISCUSSION

I.　　Evidentiary Error

**¶4**　　　　Sanchez first argues the superior court committed reversible error in overruling his objection to what he argues on appeal was improper opinion evidence because it was not based on the witness's personal knowledge or observation.　During cross-examination by defense counsel, the witness testified Sanchez had telephoned him "the day that he murdered Angel."　Sanchez objected, asserting the testimony was

---

[1]We view the trial evidence in the light most favorable to sustaining the jury's verdicts. *See State v. Nelson*, 214 Ariz. 196, 196, ¶ 2, 150 P.3d 769, 769 (App. 2007).

"unresponsive" to his question, "When was that day you talked with your brother? Do you remember the day?"

¶5 Because Sanchez failed to object at trial on the ground he argues on appeal, we review for fundamental error only. *See State v. Henderson,* 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005); *State v. Hamilton*, 177 Ariz. 403, 408, 868 P.2d 986, 991 (App. 1993) ("[A]n objection to the admission of evidence on one ground will not preserve issues relating to the admission of that evidence on other grounds."). Further, Sanchez bears the burden of establishing fundamental and prejudicial error. *See Henderson,* 210 Ariz. at 567-68, ¶¶ 22, 26, 115 P.3d at 607-08.

¶6 Here, even assuming the witness's testimony was improper, Sanchez has failed to show resulting prejudice. To prove prejudice, a defendant must show that absent the error, a reasonable jury could have reached a different result. *Id.* at 569, ¶ 27, 115 P.3d at 609. On this record, a reasonable jury could not have reached a different result. Other trial evidence overwhelmingly demonstrated Sanchez had murdered Angel and dumped his body in the desert. Further, the witness had testified in the State's case-in-chief that during the telephone call, Sanchez had told him he did not have to worry about Angel's relationship with his daughter because, "I took care of him so you never have to see him again." On this record, the witness's statement could not have caused the prejudice necessary for reversal on fundamental error review.

II.    Judicial Bias

¶7 Sanchez next argues the trial judge was biased—as evidenced in the aggregate—by threatening to remove Sanchez from the courtroom if he continued to talk to defense counsel while the judge was speaking; overruling defense counsel's objections and criticizing defense counsel regarding the propriety of his questions to several witnesses; and instructing the jury it should take into account the victims' right to attend trial in setting its deliberation schedule. Although the parties dispute which standard of review we should apply to this issue, we do not need to resolve that question because the record fails to demonstrate prejudice or bias as necessary for reversal under any applicable standard of review.

¶8 A defendant has a due process right "to have the trial presided over by a judge who is completely impartial and free of bias or prejudice." *State v. Carver*, 160 Ariz. 167, 172, 771 P.2d 1382, 1387 (1989); *see also State v. Ellison*, 213 Ariz. 116, 128, ¶ 35, 140 P.3d 899, 911 (2006). A trial judge is presumed to be free from bias and prejudice, and a defendant bears the burden of establishing bias and prejudice by a preponderance of the

evidence. *See Ellison,* 213 Ariz. at 128, ¶ 37, 140 P.3d at 911. To overcome the presumption of judicial impartiality, the record must demonstrate "a hostile feeling or spirit of ill-will, or undue friendship or favoritism" toward one of the parties. *State v. Myers,* 117 Ariz. 79, 86, 570 P.2d 1252, 1259 (1977).

¶9 First, the record does not demonstrate the judge was prejudiced or biased when, outside the presence of the jury, he became exasperated because Sanchez was speaking to his lawyer at the same time the judge was speaking. The judge told Sanchez, "When I'm speaking, sir, you better pay attention to me," and then, "If you're going to show me disrespect and you're not going to act appropriate in this courtroom, then I'll just go over to the Central Court Building and put you in a room in the back and you can view the proceedings on T.V."

¶10 The next morning, at Sanchez's request, defense counsel requested clarification as to how Sanchez had acted inappropriately, and for reassurance that the court could still be fair and impartial and was "not totally biased against [Sanchez]." The judge responded, "I was talking, and he was engaging in a conversation with you[,] distracting you. . . . When I'm talking, I expect people to pay attention. It's rude behavior. As a Judge of the Superior Court, I'm entitled to respect, and lawyers are not to engage in that kind of conduct. . . . But throughout this case, when I'm ruling, he's talking to you all the time. And you can't listen to both." The judge insisted he could be fair and impartial, and stated, "just because I'm enforcing the rules does not mean that I can't be fair and impartial." The judge revisited the issue later that morning, telling defense counsel, "If you want to accuse me of being unfair in the future, you better have some facts to support it."

¶11 On this record, the judge's remarks did not evidence bias or prejudice; they represented annoyance and exasperation at having his impartiality questioned. Annoyance and exasperation, however, do not equal judicial bias. *See Liteky v. United States,* 510 U.S. 540, 555-56, 114 S. Ct. 1147, 1157, 127 L. Ed. 2d 474 (1994) ("*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display.").

¶12 Second, the record does not demonstrate the judge was prejudiced or biased because he overruled defense counsel's objections and questioned the propriety of defense counsel's questions. "Within reason, a judge does not display bias or cause prejudice when acting *sua sponte* to control the courtroom and the trial." *State v. Bible*, 175 Ariz. 549, 595, 858 P.2d 1152, 1198 (1993); *see also Liteky*, 510 U.S. at 556, 114 S. Ct. at 1157 ("A judge's ordinary efforts at courtroom administration—even a stern and

4

short-tempered judge's ordinary efforts at courtroom administration" do not establish bias or prejudice.). The instances in which the judge overruled defense counsel's objections, or interrupted defense counsel's examination of a witness, appear to have occurred in an effort to control the evidence that would be admitted at trial. Moreover, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion, without showing either an extrajudicial source of bias or any deep-seated favoritism." *Ellison*, 213 Ariz. at 129, ¶ 40, 140 P.3d at 912 (citations omitted) (internal punctuation omitted). Sanchez makes no claim of "extrajudicial source of bias" and the record fails to show the judge's conduct in controlling the trial represented the "deep-seated favoritism" required to constitute a valid basis for claims of bias or prejudice.

¶13        Third, the record does not demonstrate the judge was prejudiced or biased when, in explaining the deliberation schedule to the jury, he instructed it to consider the victims' right to attend the trial, including when it returned its verdict, as it would take time to "get everybody back into the [court]room." The court explained it usually required 45 minutes to an hour to notify everyone of a verdict and this could pose a problem if the jury reached a verdict late in the afternoon. The court's instruction was, under the circumstances, appropriate and practical.

¶14        In summary, the record fails to support Sanchez's claim of judicial bias.

III.    Sentencing Error

¶15        Finally, Sanchez argues the superior court imposed an illegal sentence when it sentenced him to natural life for first-degree murder without first finding a "valid" aggravating circumstance. Because Sanchez did not raise this objection in the superior court, we review for fundamental error, *see supra* ¶ 5, although we acknowledge an illegal sentence constitutes fundamental error. *See State v. Kasic*, 228 Ariz. 228, 231, ¶ 15, 265 P.3d 410, 413 (App. 2011). The superior court did not, however, impose an illegal sentence when it sentenced Sanchez to natural life because of his "criminal history."

¶16        When Sanchez murdered Angel on April 27, 2011, Arizona law authorized a court to decide whether to impose a natural life or a life sentence when a person had been convicted of first-degree murder but not sentenced to death. *See generally* Ariz. Rev. Stat. ("A.R.S.") § 13-752(Q) (2010). Section 13-752(Q) provided:

If the death penalty was not alleged or was alleged but not imposed, the court shall determine whether to impose a sentence of life or natural life. In determining whether to impose a sentence of life or natural life, the court:

1. May consider any evidence introduced before sentencing or at any other sentencing proceeding.

2. Shall consider the aggravating and mitigating circumstances listed in § 13-701 and any statement made by a victim.

¶17 On its face, A.R.S. § 13-752(Q) did not require a court to make any explicit finding of any aggravating circumstance before imposing a natural life sentence. Instead, it authorized a court to "consider" any "evidence introduced before sentencing" and any of the aggravating and mitigating circumstances "listed in § 13-701." *Id*. Further, in *State v. Fell*, the Arizona Supreme Court held that a guilty verdict of first-degree murder alone authorized a natural life sentence, without any additional factual finding. 210 Ariz. 554, 558, ¶ 15, 115 P.3d 594, 598 (2005). In so holding, the court emphasized that under Arizona's sentencing statutes, a court had "discretion to sentence an offender within a range—from life to natural life—for non-capital first-degree murder," and the Legislature's enumeration of factors a court could consider when imposing a sentence within that range did not render life imprisonment the "statutory maximum" for purposes of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). *Fell*, 210 Ariz. at 558-59, ¶¶ 14-18, 115 P.3d at 598-99. Although, as Sanchez notes, in 2009 the Legislature amended the sentencing statutes at issue in *Fell*, those amendments—which are applicable here—are still controlled by *Fell*. Here, as in *Fell*, the jury's verdict alone exposed Sanchez to a possible sentence of natural life. *See* A.R.S. § 13-751(A) (2010). And, here, as in *Fell*, it was within the superior court's discretion to impose a natural life sentence without making any additional factual findings. *See* A.R.S. § 13-752(Q).

¶18 Further, we reject Sanchez's argument that the United States Supreme Court essentially overruled *Fell* in *Miller v. Alabama*, __ U.S. __, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), and *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). In *Miller*, the Supreme Court held "the Eighth Amendment forbids a sentencing scheme that mandates life in

prison without possibility of parole for juvenile offenders." __ U.S. at __, 132 S. Ct. at 2469. And, in *Graham*, the Supreme Court held the Eighth Amendment "prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." 560 U.S. at 82, 130 S. Ct. at 2034. These cases have no impact on the continuing vitality of *Fell*.

## CONCLUSION

¶19      For the foregoing reasons, we affirm Sanchez's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : jt