NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

*v.*

ADAN ORDUNO, JR.,
*Appellant*.

No. 1 CA-CR 14-0663
FILED 1-28-2016

Appeal from the Superior Court in Maricopa County
No.  CR2012-158171-001
The Honorable Pamela D. Svoboda, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Craig W. Soland
*Counsel for Appellee*

Ballecer & Segal, LLP, Phoenix
By Natalee Segal
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Kenton D. Jones and Judge Diane M. Johnsen joined.

---

**S W A N N**, Judge:

¶1          Adan Orduno, Jr. ("Defendant") appeals his conviction for influencing a witness.  He contends the trial court's decision to post a bodyguard next to a witness during her testimony constituted reversible error.[1]  For the following reasons, we affirm Defendant's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2          While awaiting trial on other charges, Defendant escaped from a Maricopa County jail by using a make-shift rope to access the ceiling tiles in his cell and crawling out onto the jail roof sometime before morning on November 11, 2012; he had left his pants stuffed with trash in his bed to simulate a sleeping person.  Jail security noticed he was missing about 9:00 a.m. on November 11 and began a search of the area.  Maricopa County Sheriff's Office ("MCSO") officers later saw Defendant on security camera footage from a nearby convenience store, wearing a jail-issued blanket, pink socks, and slide-on shoes.  MCSO officers spoke to Witness ("Witness"), a woman who had visited Defendant while he was in jail, and asked for her help in apprehending him.  When Defendant called Witness, she arranged a meeting with him to allow the officers to take him back into custody.  MCSO officers took Defendant into custody when he arrived to meet her.

¶3          A few weeks after Defendant was apprehended and returned to jail, he sent Witness a threatening letter.  In the letter, Defendant implied that he and Witness had had a relationship and made sexually explicit comments about her.  He also wrote that if Witness did

---

[1]     Defendant also submitted a pro se supplemental opening brief.  A different panel of this court struck the supplemental brief because Defendant has no right to hybrid representation.  We therefore do not consider arguments from the pro se brief.

not pay him $25,000, he would tell the police that she had been involved in several serious crimes. Witness later testified at trial that she had no knowledge of the crimes to which Defendant had alluded, but she felt frightened nonetheless. Defendant's letter also contained statements implying that she should expect retribution for cooperating with the police. On April 4, 2013, Defendant was indicted for escape, influencing a witness, and five counts of bribery of a public servant or party officer, though the court later dismissed the bribery charges on the state's motion.

¶4　　　　　The parties estimated the trial would last about five days, but it was prolonged for numerous reasons. Before the trial began, a discovery dispute delayed jury selection while the jury pool waited. Defendant chose to represent himself at trial, but because he was considered a security risk, he wore restraints during trial. To prevent jurors from seeing the restraints, the court took the time to hold all bench conferences at the defense table and put them on the record after the jury left the courtroom. On the second day of trial, Defendant developed a medical issue that required treatment, resulting in an early dismissal for the day. His condition and treatment also caused additional time-consuming discussion without the jury present. The next day, a juror had an emergency that caused an early dismissal because the jury did not have alternate jurors. The trial slowed again two days later as Defendant conducted a very lengthy cross-examination of Witness. The court acknowledged to the jury that the trial was progressing slowly.

¶5　　　　　Before the sixth trial day, the court received an email from a juror expressing frustration about the trial delays, complaining about Defendant's conduct, and expressing doubt that the juror could be unbiased about Defendant. The email also stated that the jurors had discussed their frustration with Defendant among themselves. The court individually interviewed the jurors to ensure they had not violated the admonition by discussing the facts of the case. None of the jurors admitted to discussing the facts of the case, but two jurors stated they had already formed an opinion regarding Defendant's guilt. After further questioning, the two jurors said they could remain impartial until deliberations, and the court did not dismiss them. When the court interviewed the juror who had sent the email, the juror stated that he had been affected by Witness's demeanor: "I was sitting right in front of the witness. She was visibly shaken when she sat down. She was with a security guard sitting next to her." He affirmed, however, that he had not formed an opinion about Defendant's guilt, and the trial continued.

**¶6**          The jury returned a verdict of guilty on both counts and found one aggravating factor for the escape charge and two aggravating factors for the influencing a witness charge.   The court sentenced Defendant accordingly to imprisonment for an aggravated term of six years for escape and a super-aggravated term of seven and one half years for influencing a witness, to be served consecutively.   Defendant appeals.

## DISCUSSION

**¶7**          Defendant asserts, based on one juror's statement, that the court stationed a bodyguard next to Witness as she testified.  He contends that the presence of the security guard seated with Witness while she testified violated his right to due process, his right to confront and cross-examine witnesses and his right to the presumption of innocence.   He asserts that the court's decision to place security next to Witness led the jury to believe that the court thought he was guilty, precluding a fair trial on the charge of influencing a witness.

**¶8**          Generally, the trial court has broad discretion over courtroom security measures, *State v. Cruz*, 218 Ariz. 149, 168, ¶ 118 (2008) and we uphold its security measures when they are supported by the record, *State v. Davolt*, 207 Ariz. 191, 211, ¶ 84 (2004).  Because Defendant did not raise the issue of courtroom security in the trial court, we review only for fundamental error.  *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005).  On fundamental error review, Defendant must prove both that fundamental error occurred and that it caused him prejudice.  *Id.* at ¶ 20. Based on the individual facts and circumstances of a case, the deployment of security personnel could amount to fundamental error if it "takes away a right that is essential to [a defendant's] defense, and is of such magnitude that he could not have received a fair trial."  *Id.* at 568, ¶ 24.

**¶9**          But "conspicuous, or at least noticeable, deployment of security personnel in a courtroom during trial" is not inherently prejudicial to a defendant.  *Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986). Because noticeable security measures may create the impression in the minds of the jury that a defendant is dangerous or guilty, such measures are evaluated on a case-by-case basis for prejudice.  *Id.* at 569, 571.

**¶10**          To demonstrate error, Defendant must first provide evidence of a conspicuous security presence in his trial.  *State v. Rivera*, 168 Ariz. 102, 103 (App. 1990) ("[I]t is the defendant's duty to prepare the record in such a manner as to enable an appellate court to pass upon the questions sought to be raised in the appeal.").  Defendant points only to

the juror's statement that Witness "was with a security guard sitting next to her."[2]  From that statement, it is unclear even if the juror was speaking about the witness sitting at the stand to testify or sitting in the gallery after her testimony.  The juror's statement described nothing about the guard's demeanor or actions.  Defendant had the opportunity to clarify the juror's concern through further questioning, but did not do so.  Without more, the fact that one juror took note of one security guard in the court does not demonstrate a prejudicial security presence.  We therefore conclude that Defendant has not presented sufficient evidence to enable us to determine that courtroom security was noticeable to the jury.[3]  On this record, we can find no error, much less fundamental error.

---

[2]  When Witness first took the stand, she testified that she was nervous, adding "I would feel more comfortable with security standing right here."

[3]  Defendant's assertion that the court intentionally omitted from the record its decision to place a guard next to Witness during her testimony is both unsupported and highly improbable.  The trial transcripts alone are over 1000 pages and contain extensive discussions about security measures, including the court's concerns that Defendant not reveal he was in custody during the trial.  The trial court went to great lengths to preserve the trial record and avoid prejudicing the jury.

## CONCLUSION

**¶11** For the foregoing reasons, we affirm Defendant's convictions and sentences.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : ama