NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RONALD GREG CORTEZ, *Appellant.*

No. 1 CA-CR 14-0177
FILED 4-9-2015

Appeal from the Superior Court in Maricopa County
No. CR2012-010207-001
The Honorable Warren J. Granville, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jeffrey L. Force
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Kent E. Cattani joined.

**K E S S L E R**, Judge:

¶1        Ronald Greg Cortez filed this appeal in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), following his conviction of first degree murder, a class one dangerous felony.  Finding no arguable issues to raise, Cortez's counsel requested that this Court search the record for fundamental error.  Cortez was given the opportunity to but did not file a *pro per* supplemental brief.  For the reasons that follow, we affirm Cortez's conviction and sentence.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        In 1996, S.M.'s body was found off of Lower Buckeye Road.  At the scene, Phoenix police officers collected two cigarette butts, and took photographs of several shoe impressions.  One set of shoe impressions matched the footwear of S.M.  Another set matched the impressions left by a pair of Nike Air Triax shoes.  Detective R.R., a homicide detective at the Phoenix Police Department, interviewed several people during his investigation, and learned of a rumor that S.M. had been involved in robbing a drug dealer named Dan Bittle.  R.D.B. told Detective R.R. about drugs in the home of Cortez, a suspected associate of Bittle.

¶3        Upon obtaining a search warrant, Police searched Cortez's house and found drugs and guns, which Cortez claimed to be his own.  Additionally, Detective R.R. recovered a pair of Nike Air Max Triax shoes in Cortez's bedroom.  After advising Cortez of his *Miranda*[1] rights, Detective R.R. questioned him about the murder of S.M. and several of the individuals Detective R.R. believed to be involved in her murder.  At the time, Cortez claimed he knew nothing about S.M.'s murder and had been shocked when S.M.'s friend had told him about it.

¶4        The investigation did not lead to any charges being filed and in 1997, the case was categorized as inactive.  In February of 2009, a police

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

detective reviewed the case and submitted the cigarette butts found at the scene for DNA analysis.[2] The DNA analysis of one of the cigarette butts matched S.M. and the other matched Cortez's record in the DNA database.

¶5        Given this match, Detective C.S., a cold case investigator with the Phoenix Police Department, interviewed Cortez. After being advised of his *Miranda* rights, Cortez stated that although he had been told what had happened to S.M., he was not present during the murder. However, when confronted with the DNA evidence that placed him at the scene, Cortez stated he had actually been kidnapped at gunpoint along with S.M. According to Cortez, Martin Rivera and Jesse Aguilar forced Cortez and S.M. into a vehicle and drove them to the crime scene where Rivera and Aguilar directed Cortez and S.M. to get out and smoke a cigarette. Cortez told Detective C.S. that when he and S.M. were instructed to return to the vehicle, Rivera grabbed Cortez and threw him up against the truck while Aguilar shot S.M. several times. Cortez claimed he never told anyone about the events because he feared for his life.

¶6        Cortez was charged with first degree murder and pled not guilty. At trial, the State presented two witnesses, R.D.B. and B.P., who testified regarding the events leading up to the murder of S.M. According to these witnesses, several people were searching for S.M. because they believed she was responsible for robbing a drug dealer. Those searching for S.M. included Rivera, Aguilar, Bittle, and Cortez, who were involved in a small drug operation that transported and sold methamphetamines and marijuana. According to the testimony at trial, on the day of her murder, S.M. showed up at B.P.'s trailer, where R.D.B. was also present, that S.M. planned to make a deal with Rivera to repay him, and that S.M. believed some members of the Aryan Brotherhood would supply her with enough drugs to do that.

¶7        At some point, Cortez was summoned to the trailer to hear S.M.'s proposal. Rivera, Aguilar, and Bittle also arrived at the trailer, but Bittle was forced to leave. S.M.'s plan was explained to Rivera, and shortly thereafter Rivera and Aguilar left the trailer. Thereafter Cortez supplied S.M., R.D.B., and B.P. with methamphetamine. After Rivera and Aguilar returned, Cortez and S.M. willingly left with them.[3] S.M. was murdered

---

[2] In 1996, DNA analysis was not available to police.

[3] Although the witnesses' testimony about how S.M. left the trailer conflicts, both R.D.B. and B.P. testified that the last time they saw S.M. was when she left the trailer and got into a truck with Rivera, Aguilar, and Cortez, who appeared to go willingly.

later that night. Both R.D.B. and B.P. testified that the next time each of them spoke to Cortez, Cortez blamed S.M.'s murder on the Aryan Brotherhood.

¶8 The jury convicted Cortez of first degree murder. The court sentenced Cortez to life imprisonment with the possibility of parole after 25 years, and awarded Cortez 447 days of presentence incarceration credit.

¶9 Cortez filed a timely appeal. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, as well as Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2003), 13-4031 (2010), and -4033(A)(1) (2010).

## STANDARD OF REVIEW

¶10 In an *Anders* appeal, this Court must review the entire record for fundamental error. *State v. Richardson*, 175 Ariz. 336, 339, 857 P.2d 388, 391 (App. 1993). Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005) (quoting *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984)). To obtain a reversal, the defendant must also demonstrate that the error caused prejudice. *Id*. at ¶ 20.

## DISCUSSION

¶11 After careful review of the record, we find no grounds for reversal of Cortez's conviction or sentence. The record reflects Cortez had a fair trial and all proceedings were conducted in accordance with the Arizona Rules of Criminal Procedure. Cortez was present and represented by counsel at all critical stages of trial except when his presence was waived, was given the opportunity to speak at sentencing, and the sentence imposed was within the range for Cortez's offense.

I. Sufficiency of the Evidence

¶12 In reviewing the sufficiency of evidence at trial, "[w]e construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Greene*, 192 Ariz. 431, 436, ¶ 12, 967 P.2d 106, 111 (1998). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996) (quoting *State v. Scott*, 113 Ariz. 423,

424-25, 555 P.2d 1117, 1118-19 (1976)). Given the evidence presented at trial, a reasonable fact-finder could have concluded either that Cortez murdered S.M. or intentionally aided those who did.

### A.    First Degree Murder

¶13        "A person commits first degree murder if . . . [i]ntending or knowing that the person's conduct will cause death, the person causes the death of another person . . . with premeditation . . . ."  A.R.S. § 13-1105(A)(1) (2010).[4]  DNA evidence, shoe print evidence, and Cortez's own admission place Cortez at the scene of S.M.'s murder.  According to the testimony at trial, Cortez's DNA matched the cigarette butt found at the scene and a pair of shoes matching the impression left at the scene were found in his home.  Moreover, the jury heard the recording of Detective C.S.'s interview of Cortez wherein he first stated that he was not present at the scene but then, after being confronted with the DNA evidence placing him there, claimed Rivera and Aguilar kidnapped him and S.M.

¶14        Further, the record shows that Cortez actively participated in the events leading up to S.M.'s death including that: (1) Cortez, as a member of the drug operation, was one of the people looking for S.M. in connection with her rumored involvement in the robbery of a drug dealer, (2) Cortez was summoned to B.P.'s trailer on the day of S.M.'s murder, along with Rivera and Aguilar, (3) Cortez heard S.M.'s plan to pay Rivera back, (4) after Rivera and Aguilar left, Cortez supplied S.M., R.D.B., and B.P. with methamphetamine, and (5) upon their return, Cortez willingly left with Rivera, Aguilar, and S.M.  The State established premeditation with such evidence, because such action by Cortez demonstrates that he "acted with either the intent or knowledge that he [or his associates] would kill [S.M.] and that such intent or knowledge preceded the killing by a length of time permitting reflection." *State v. Ellison*, 213 Ariz. 116, 134, ¶ 66, 140 P.3d 899, 917 (2006) (internal quotation marks and citation omitted); *see also* A.R.S. § 13-1105(A)(1).

### B.    Accomplice Liability

¶15        Further, even if Cortez did not pull the trigger of the gun which killed S.M., there was sufficient evidence that he was liable for first degree murder as an accomplice.  Cortez "is criminally accountable for the conduct of another if . . . [a]cting with the culpable mental state sufficient

---

[4] We cite to the current versions of statutes when no changes material to this decision have since occurred.

for the commission of the offense, such person causes another person . . . to engage in such conduct." A.R.S. § 13-303(A)(2) (2010). "If causing a particular result is an element of an offense, a person who acts with the kind of culpability with respect to the result that is sufficient for the commission of the offense is guilty of that offense if . . . [t]he person aids, counsels, agrees to aid or attempts to aid another person in planning or engaging in the conduct causing such result." A.R.S. § 13-303(B)(2). Given that the record reflects Cortez was present at the scene when S.M. was murdered and that Cortez actively participated in the events leading up to S.M.'s death, the evidence was sufficient for a reasonable fact-finder to conclude that Cortez intentionally acted with premeditation in aiding those who murdered S.M.[5]

¶16　　　Therefore, in comparing the evidence in the record to the elements listed in A.R.S. §§ 13-1105(A)(1) and 13-303(B)(2), we find there was sufficient evidence to support Cortez's conviction for first degree murder.

II.　　Presentence Incarceration Credit

¶17　　　Presentence incarceration credit is given for time spent in custody beginning on the day of booking, *State v. Carnegie*, 174 Ariz. 452, 454, 850 P.2d 690, 692 (App. 1993), and ending on the day before sentencing, *State v. Hamilton*, 153 Ariz. 244, 246, 735 P.2d 854, 856 (App. 1987). Here, the presentencing report indicated that Cortez had served 446 days of presentence incarceration. At sentencing, the trial court gave Cortez credit for 447 days. By our calculation, Cortez was incarcerated for 447 days prior to sentencing, and thus, was awarded the appropriate credit.

**CONCLUSION**

¶18　　　For the foregoing reasons, we affirm Cortez's conviction and sentence. Upon the filing of this decision, defense counsel shall inform Cortez of the status of his appeal and his future appellate options. Defense

---

[5] Although Cortez claimed he did not shoot S.M. and that he did not report the murder to the police because he feared for his life, this Court has declined "to recognize duress as a defense to accomplice liability for murder." *Ellison*, 213 Ariz. at 134, ¶ 69, 140 P.3d at 917; *see also* A.R.S. § 13-412(C) (2010) ("The defense provided by subsection A is unavailable for offenses involving homicide or serious physical injury."). Further, none of the evidence recovered at the scene, nor any of the testimony from witnesses, suggests that Cortez was an unwilling participant in the death of S.M.

counsel has no further obligations, unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Upon the Court's own motion, Cortez shall have thirty days from the date of this decision to proceed, if he so desires, with a *pro per* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
FILED: ama