NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# Arizona Court of Appeals
### Division One

---

STATE OF ARIZONA, *Appellee,*

*v.*

JAMES LEE KEMP, *Appellant.*

No. 1 CA-CR 16-0035
FILED 7-11-2017

---

Appeal from the Superior Court in Maricopa County
No. CR2011-007335-001
The Honorable Roland J. Steinle, Retired Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

The Heath Law Firm, PLLC, Mesa
By Mark Heath
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Patricia K. Norris[1] delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Kenton D. Jones joined.

**N O R R I S**, Judge:

¶1        A jury convicted James Lee Kemp of one count of sexual abuse, three counts of molestation of a child, nine counts of sexual conduct with a minor, one count of public sexual indecency to a minor, and two counts of sexual exploitation of a minor (the "sex crimes"). On appeal, Kemp argues he is entitled to a new trial because the superior court improperly treated the victim's mother, a witness in the case, as a statutory victim pursuant to the Victims' Bill of Rights ("VBR") and allowed her to remain in the courtroom throughout trial even though defense counsel invoked the rule of exclusion. Assuming Kemp preserved this argument for appeal and he is entitled to a presumption that the mother's presence in the courtroom was prejudicial, the record nevertheless clearly rebuts that presumption as it establishes Kemp was not prejudiced by her presence in the courtroom. Therefore, we affirm Kemp's convictions and sentences.

## DISCUSSION

¶2        In February 2010, a grand jury indicted Kemp for crimes he committed against his stepdaughter when she was between the ages of 12 and 14. At the time of the 2010 indictment, the victim was 17 years' old. In July 2011, after the victim turned 18, the State obtained a new indictment alleging the same charges as the 2010 indictment and adding additional charges. The superior court then dismissed the 2010 case without prejudice.

¶3        During trial in 2015, before calling any witnesses in the State's case-in-chief, the prosecutor informed the superior court the victim's mother wished to remain in the courtroom throughout trial pursuant to the VBR, which defines "victim" as any "person against whom the criminal offense has been committed . . . [and] any other person related to the person by consanguinity or affinity to the second degree . . . ." Ariz. Rev. Stat.

---

[1]The Honorable Patricia K. Norris, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

("A.R.S.") § 13-4401(19) (Supp. 2016).[2] Pursuant to the VBR, a "victim" has a right "[t]o be present at and, upon request, to be informed of all criminal proceedings where the defendant has the right to be present." Ariz. Const. art. 2, § 2.1(A)(3); *see, e.g., State v. Millis*, 242 Ariz. 33, 42 n.9, ¶ 30, 391 P.3d 1225, 1234 n.9 (App. 2017) (mother of minor victim is a "victim" for purposes of the VBR).

**¶4**          Defense counsel objected, citing the rule of exclusion. *See* Ariz. R. Crim. P. 9.3(a) ("The court may, and at the request of either party shall, exclude prospective witnesses from the courtroom during opening statements and the testimony of other witnesses."). The superior court granted the mother's request. On appeal, Kemp argues the superior court's ruling was improper because the victim was no longer a minor as of the July 2011 indictment and, thus, her mother was no longer entitled to statutory victim status.

**¶5**          As an initial matter, the parties dispute whether Kemp preserved the argument he raises on appeal and, therefore, our standard of review. *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 18-19, 115 P.3d 601, 607 (2005) (appellate court reviews for harmless error when defendant objects at trial; appellate court reviews for fundamental error when defendant fails to object) (citations omitted).

**¶6**          And, the parties also dispute whether the VBR applies because the victim turned 18 after the State obtained the second indictment in 2011. If the VBR is inapplicable, prejudice is presumed because the superior court denied Kemp's exclusionary request. *See State v. Roberts*, 126 Ariz. 92, 94, 612 P.2d 1055, 1057 (1980) ("[F]ailure to honor an exclusionary request is presumed prejudicial unless the absence of prejudice is clearly manifest from the record"; a defendant's "conviction must . . . be reserved unless scrutiny of the record reveals that the court's denial of his motion to exclude . . . did not prejudice him in any way."). But, if the VBR applies, its enactment "effectively removed the presumption of prejudice that we traditionally attached to a trial judge's refusal to exclude a witness from the courtroom." *State v. Fulminante*, 193 Ariz. 485, 502, 975 P.2d 75, 92 (1999). Kemp would thus have to show prejudice if he preserved the argument he raises on appeal, or fundamental error if he did not preserve the argument.

**¶7**          We do not, however, need to decide whether Kemp preserved the argument he raises on appeal or whether the VBR applies because, as discussed below, the record clearly establishes the mother's presence in the

---

[2]The Legislature has not materially amended this statute after the date of Kemp's trial, thus we cite the the current version of the statute.

courtroom throughout trial did not prejudice Kemp by, as he argues, "smooth[ing] the rough edges" of the victim's testimony.

¶8 In support of his "smoothing" argument, Kemp first argues the victim's mother "corrected" the victim's testimony regarding a towel Kemp placed under the victim when he sexually abused her. There was, however, nothing for the victim's mother to correct regarding the towel.

¶9 A detective who interviewed the victim in 2009 testified that during the interview, the victim told him Kemp used a white towel when he abused her. When asked about the towel at trial, the victim testified, "For the most part, it was a green towel that [Kemp] laid underneath me, but I don't remember any other ones specifically. He had many towels." Although the mother later testified she recognized a white towel police found in a filing cabinet in the family's den,[3] the mother testified only that she recognized it as "a kitchen towel [the family] had." The mother did not testify about the color of the towel or towels that Kemp used during the sex crimes—nor could she as she had no knowledge Kemp was sexually abusing the victim. Therefore, the mother did not "correct" the victim's testimony.

¶10 Kemp also argues the mother's presence in the courtroom interfered with his ability to cross examine her regarding Kemp's use of the white towel police found in the filing cabinet. Outside the presence of the jury, defense counsel told the court he wanted to question the mother about the towel and about "something that they [the mother and Kemp] had done" with the towel—the implication being his sperm on the towel was innocuous. To decide how to proceed, the superior court asked the mother whether she was aware there was a towel in the filing cabinet. She replied:

> THE WITNESS: I was not necessarily aware that there was a towel in there. However, I was aware that he would, from time-to-time, I believe, use a towel.
>
> THE COURT: I didn't understand that.
>
> THE WITNESS: I believe he used towels. I just didn't know that there was one there at that time.

---

[3]A forensic scientist testified the white towel police found in the file cabinet contained sperm that matched Kemp's DNA.

THE COURT: When you say he used towels, what did he use them for?

THE WITNESS: Well, I think he watched his computer in the den, and he would ejaculate. And he had a towel, so wasn't a big mess in the den.

THE COURT: So, you just surmised that, or do you, in fact, know that that's what was happening?

THE WITNESS: I've seen him do it before. I've seen it.

¶11 Responding to this revelation, the superior court asked defense counsel, "So, what you want to do is get in the fact that the defendant had a towel in the file cabinet because he would masturbate and ejaculate into a towel after watching the computer, which is probably 404(b)-type evidence. Do you really want that door opened?" Defense counsel responded, "That's not the door I wanted opened. I didn't expect that response." Given that the mother's testimony was not what defense counsel expected, he did not question the mother about Kemp's use of the towel.

¶12 The mother's presence in the courtroom did not interfere with defense counsel's ability to cross-examine her. Instead, as the foregoing demonstrates, defense counsel decided not to cross-examine the mother regarding Kemp's use of a towel because he believed the substance of her testimony would be prejudicial. Further, the mother's description of how Kemp had used the towel did not substantiate the victim's testimony.

¶13 Kemp additionally argues the victim's mother "minimized her co-parenting [with Kemp] in the[ir] strict monitoring" of the victim. This "minimalization," however, did not "smooth" any rough edges in the victim's testimony, as Kemp argues. At trial, Kemp argued the victim had fabricated the allegations of sexual abuse to get him "out of the way" because she was upset over his close monitoring of her activities. In her testimony, the mother confirmed the victim was upset over the monitoring, and, indeed, acknowledged she had assisted Kemp in monitoring the victim's activities.

¶14 Finally, Kemp argues the victim's mother "corrected [the victim's] timeline for bathroom remodeling." During the time Kemp was

abusing the victim, Kemp and the victim's mother remodeled the bathroom the victim used. When asked about the timeline for the bathroom remodel the victim testified, "It got torn up. I don't remember what year. When we took out all the flooring, we tore up my bathroom, and it didn't get remodeled until I was 18 or 19. Only a few years ago." In contrast, the mother testified that during the bathroom remodel the victim "would have been about 16, 16 or younger. Might have been 15."

¶15 Given the conflicting testimony about when the family remodeled the bathroom, the mother's testimony did not, as Kemp asserts, "correct" the timeline for the remodel. Indeed, during closing argument, defense counsel emphasized that the mother testified the remodel did not occur until the victim was 16—in direct contravention to the victim's testimony.

## CONCLUSION

¶16 For the foregoing reasons, Kemp was not prejudiced by the mother's presence in the courtroom throughout trial. Therefore, we affirm Kemp's convictions and sentences.

