NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ROGER NELSON, *Appellant.*

No. 1 CA-CR 14-0260
FILED 1-19-2016

Appeal from the Superior Court in Maricopa County
No.  CR2011-145186-001
The Honorable John R. Ditsworth, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry Reid
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Samuel A. Thumma joined.

---

**K E S S L E R**, Judge:

¶1        Roger Nelson filed this appeal in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), following his conviction of one count of leaving the scene of a damage accident, one count of disorderly conduct, one count of armed robbery, three counts of aggravated assault, and one count of attempted second degree murder.   Finding no arguable issues to raise, Nelson's counsel requested that this Court search the record for fundamental error.   Nelson was given the opportunity to, but did not submit a *pro per* supplemental brief.   For the reasons that follow, we affirm Nelson's convictions and sentences.

### FACTUAL AND PROCEDURAL HISTORY

¶2        ND and his wife, CD, were leaving Arizona Mills Mall when they saw another car speeding toward them, driving the wrong way on a one-way street.  The car hit a curb and crashed into a tree.   A man, identified as Nelson, exited the car and began walking quickly toward them.   At approximately ten feet from ND and his wife, Nelson pointed a small silver handgun at their windshield.  Nelson pointed the gun at them for fifteen to thirty seconds before heading toward the mall.  ND and CD called 911 to report the incident to the police.

¶3        Officers arrived at the mall, aware that Nelson had left the accident scene and was armed.  Officer B. was walking through the parking lot in the direction Nelson was described as heading, when a man abruptly stopped his vehicle to tell him that Nelson had pointed a gun at him, and then entered the mall.  Officer B., with the help of additional officers, began searching the mall for suspects.

¶4        Nelson had proceeded to Famous Footwear, where he grabbed two boxes of shoes and walked over to the cash register.  AM, a Famous Footwear employee, testified that Nelson became visibly upset when she asked him for his driver's license or name in order to register him

for rewards, and he pulled a small silver gun out from his shorts and pointed it at her stomach. Nelson instructed AM to put the shoes in a bag, and she complied. Nelson then took the bag of shoes and walked calmly out of the store. The incident was recorded by a security camera, and AM later identified Nelson once he was in custody.

¶5    Officer K. arrived on the scene and helped in conducting a perimeter to keep the suspect detained in the area. He soon saw Nelson, who fit the description of the suspect, and decided to stop and identify him. Officer K. told Nelson he needed to talk to him, and stated he needed to pat him down first to make sure he was not carrying any weapons. Officer K. testified that Nelson became irritated, began to back away, and said "whoa, whoa, I'm a citizen." When Officer K. advanced, Nelson pointed the silver handgun at the officer's chest, and Officer K. reacted by grabbing the gun and pushing it away. Nelson tried to swing the gun back toward Officer K., repeatedly stating "I'm going to kill you." The two struggled over the gun. When the gun failed to fire, Officer K. wrestled with Nelson, gaining possession of the weapon, which he tossed behind himself. Officer K. then took a few steps back before subduing Nelson with a Taser. Nelson was arrested and taken into custody.

¶6    Officer A. *Mirandized*[1] and interviewed Nelson at the scene. Nelson admitted to crashing his car into a tree, possessing a loaded gun, and pointing the gun at both AM and Officer K.

¶7    Detective O. *Mirandized* and interviewed Nelson at three in the morning the following day. During the interview, Nelson admitted that he wrecked his grandfather's car and was in possession of a loaded weapon. He stated that after the accident he tried to stop a couple by pointing his gun at them, and then ran into the mall to hide. Once inside the mall, Nelson admitted to robbing Famous Footwear, but minimized the encounter claiming he only showed AM the gun and tapped it on the counter so she would know it was real. Nelson further admitted to waving the gun around in the mall and trying to carjack a man in the parking lot by trying to shoot out the vehicle's window. When the gun did not fire, Nelson took the magazine and chambered bullet out of the gun, cleaned it, reinserted the magazine into the gun, and walked away. Finally, Nelson admitted that he knew Officer K. was a uniformed police officer, that he told Officer K. to back off or he would shoot him, and that he pointed the gun at the officer's chest.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

**¶8**        A criminalist with the Arizona Department of Public Safety testified that the gun worked, but not well.  He concluded the bullet failed to fire during the struggle with Officer K. because the firing pin struck the periphery, rather than the center of the primer.

**¶9**        Nelson was convicted of Count 1: Leaving the Scene of a Damage Accident; Count 2: Disorderly Conduct; Count 3: Armed Robbery; Count 4: Aggravated Assault; Count 5 Amended: Attempted Second Degree Murder; Count 6: Aggravated Assault; and Count 7: Aggravated Assault.  Nelson was sentenced to a twenty-six year term of imprisonment[2] and awarded 948 days of presentence incarceration credit.

**¶10**        Nelson timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, as well as Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2003), 13-4031 (2010), and -4033(A)(1) (2010).

## STANDARD OF REVIEW

**¶11**        In an *Anders* appeal, this Court must review the entire record for fundamental error.  *See State v. Banicki*, 188 Ariz. 114, 117 (App. 1997). Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005) (quoting *State v. Hunter*, 142 Ariz. 88, 90 (1984)).  To obtain a reversal, the defendant must also demonstrate that the error caused prejudice.  *Id*. at ¶ 20.

## DISCUSSION

**¶12**        After careful review of the record, we find no grounds for reversal of Nelson's convictions or sentences.  The record reflects Nelson had a fair trial and all proceedings were conducted in accordance with the Arizona Rules of Criminal Procedure.  Nelson was present and represented by counsel at all critical stages of trial, had the opportunity to speak at sentencing, and the sentences imposed were within the range for Nelson's offenses.

---

[2] Nelson was sentenced to one day for Count 1, three years for Count 2, twenty-one years for Counts 3-5, and five years for Counts 6-7.  Counts 1-5 were ordered to be served concurrently, with Counts 6-7 to be served upon release from Counts 1-5.

¶13 In reviewing the sufficiency of evidence at trial, "[w]e construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Greene*, 192 Ariz. 431, 436, ¶ 12 (1998). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (quoting *State v. Scott*, 113 Ariz. 423, 424-25 (1976)).

¶14 First, there is evidence in the record to support the jury's conviction of Nelson for the crime of leaving the scene of a damage accident. Pursuant to A.R.S. § 28-662 (Supp. 2015), if after a vehicular accident there is damage to a vehicle, the driver is required to stop or immediately return to the scene of the accident, remain at the scene until all legal requirements are fulfilled, and make the stop without obstructing traffic. As explained above, two witnesses saw Nelson crash his car and leave the scene, and Nelson admitted doing so during his interrogation. *See supra* ¶¶ 2, 7. Based on the record, there is sufficient evidence to support Nelson's conviction of leaving the scene of a damage accident.

¶15 There is also sufficient evidence in the record to support the jury's conviction of Nelson for the crime of disorderly conduct. "A person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person . . . [r]ecklessly handles, displays or discharges a deadly weapon or dangerous instrument." A.R.S. § 13-2904(A)(6) (2010). During his interview with detectives, Nelson admitted to possessing a loaded gun, to "waving it around like an idiot," and that guns can be used as a tool to terrify people with.

¶16 There is sufficient evidence in the record to support the jury's conviction of Nelson for the count of armed robbery. "A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property." A.R.S. § 13-1902(A) (2010). A person commits armed robbery if, during the commission of robbery, the person "[i]s armed with a deadly weapon or a simulated deadly weapon . . . ." A.R.S. § 13-1904(A)(1) (2010). As discussed above, the evidence of Nelson's use of his handgun to steal two pairs of shoes from Famous Footwear is sufficient to prove armed robbery. *See supra* ¶ 4, 7.

5

¶17        There is sufficient evidence in the record to support the jury's conviction of Nelson for the count of aggravated assault as to Officer K. "A person commits assault by . . . [i]ntentionally placing another person in reasonable apprehension of imminent physical injury." A.R.S. § 13-1203(A)(3) (2010). "A person commits aggravated assault . . . [i]f the person uses a deadly weapon or dangerous instrument," A.R.S. § 13-1204(A)(2) (Supp. 2015), or "commits the assault knowing or having reason to know that the victim is . . . [a] peace officer, or a person summoned and directed by the officer while engaged in the execution of any official duties or if the assault results from the execution of the peace officer's official duties," A.R.S. § 13-1204(A)(8)(a). There was testimony that Nelson possessed a loaded weapon, that he knew Officer K. was a police officer, that he told Officer K. to back off or he would shoot him, and that he pointed the gun at Officer K.'s chest. Officer K. further testified that while Nelson was pointing the gun at him, he thought he was going to die.

¶18        There is sufficient evidence in the record to support the jury's conviction of Nelson for attempted second degree murder. A person commits attempted second degree murder if he intentionally does anything, which under the circumstances as the person believes them to be, is a step in a course of conduct planned to culminate in the intentional death of another person. A.R.S. §§ 13-1001 (2010) (attempt), 13-1104 (2010) (second degree murder). The evidence of aggravated assault as to Officer K. is also sufficient to prove all the elements of attempted second degree murder. There was further testimony that there were two indentations on the primer of the gun's bullet indicating that the trigger had been pulled twice, and the bullet failed to fire because the firing pin struck the periphery rather than the center of the primer. Because Nelson admitted to trying to carjack a man in the parking lot by trying to shoot out the vehicle's window, the jury could infer that the second indentation on the bullet occurred when Nelson and Officer K. were struggling for control over the weapon.

¶19        Finally, there is sufficient evidence in the record to support the jury's conviction of Nelson for two counts of aggravated assault as to ND and CD. "A person commits assault by . . . [i]ntentionally placing another person in reasonable apprehension of imminent physical injury," A.R.S. § 13-1203, and "[a] person commits aggravated assault . . . [i]f the person uses a deadly weapon or dangerous instrument," A.R.S. § 13-1204(A)(2). Here, ND and CD both testified that Nelson pointed a gun at them and they feared for their lives. *See supra* ¶ 2. In addition, during the interrogation, Nelson admitted that after the accident he tried to stop a couple by pointing his gun at them before running into the mall to hide.

¶20          In comparing the evidence in the record to the elements listed in the statutes, we find there was sufficient evidence to support the jury's conviction of Nelson for leaving the scene of a damage accident, disorderly conduct, armed robbery, three counts of aggravated assault, and attempted second degree murder.

**CONCLUSION**

¶21          For the foregoing reasons, we affirm Nelson's convictions and sentences.  Upon the filing of this decision, defense counsel shall inform Nelson of the status of his appeal and his future appellate options.  Defense counsel has no further obligations, unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review.  *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).  Upon the Court's own motion, Nelson shall have thirty days from the date of this decision to proceed, if he so desires, with a *pro per* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama