NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LEONARDO CHAVEZ, *Appellant.*

No. 1 CA-CR 15-0696
FILED 1-24-2017

Appeal from the Superior Court in Maricopa County
No. CR2014-121853-002
The Honorable Jay R. Adleman, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Elizabeth B.N. Garcia
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Rena P. Glitsos
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Patricia K. Norris delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Paul J. McMurdie joined.

---

**N O R R I S**, Judge:

¶1          Leonardo Chavez appeals his convictions and sentences for several possession of drugs for sale and drug paraphernalia offenses and misconduct involving a weapon. On appeal he argues the State introduced improper and prejudicial character evidence that would have led the jury to infer he was a gang member. In making this argument, Chavez points to the testimony of, first, Tempe Police Detectives T.M. and M.M. that they were working in the gang unit at the time they assisted, in a narcotics investigation targeting Chavez, with executing a search warrant on a Phoenix apartment Chavez was staying at[1]; second, Detective J.C.'s "graphic" testimony regarding how a SWAT team executes an entry; third, Detective R.E.'s response to a juror question asking why the Tempe Police were "investigating drug sales in Phoenix"; and, fourth, Detective R.E.'s response to a question posed by defense counsel regarding the totality of the evidence.

¶2          Reviewing for fundamental error because the defense did not object to any of the foregoing testimony, we reject Chavez's argument. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005). The testimony identified by Chavez neither individually, nor collectively, constituted character evidence.[2]

---

[1]Detective R.E. testified that Chavez initially told him he was living in the apartment, but later told him that he was only staying at the apartment temporarily. Although the difference is immaterial to this appeal, the State, however, presented additional evidence of Chavez's presence in the apartment. For example, officers found the majority of the evidence in the master bedroom, men's clothing in the master bedroom, and Chavez's wallet hidden under the mattress in the master bedroom.

[2]We view all facts and reasonable inferences in the light most favorable to sustaining the verdicts. *State v. Bon*, 236 Ariz. 249, 251, ¶ 2, 338 P.3d 989, 991 (App. 2014) (quotations and citation omitted).

¶3        Evidence of a defendant's gang affiliation is improper "bad character" evidence under Arizona Rule of Evidence 404(a)(1) when a defendant has not put his or her character at issue. *See State v. Ballantyne*, 128 Ariz. 68, 71, 623 P.2d 857, 860 (App. 1981) (prosecutor's questions regarding defendant's alleged membership in Hell's Angels along with having defendant show the jury his skull and "Harley Davidson" tattoo was improper and prejudicial character evidence under Rule 404(a)(1); defendant had not put his character at issue). Here, Chavez did not put his character at issue.

¶4        The testimony that Chavez identifies, however, *see supra* ¶ 1, cannot reasonably be construed as evidence of "bad character" under Rule 404(a)(1). First, the only reference to gangs by Detective T.M. and Detective M.M. was their testimony, when summarizing their training and work experience, that they worked in the gang unit at the time they assisted with the warrant. Further, the testimony of Detective T.M. demonstrated the search warrant involved "a narcotic-related" investigation—without any discussion of gangs. Thus, a reasonable jury would not have inferred from Detective T.M.'s and Detective M.M.'s testimony concerning their work history that Chavez was affiliated with a gang.

¶5        Second, Detective J.C., who was part of the SWAT team that entered Chavez's apartment, made no reference to gangs. And, his testimony regarding the procedures followed by a SWAT team provided context to the entry that occurred when the SWAT team executed the warrant on Chavez's apartment.

¶6        Third, Detective R.E.'s response to the juror's question, *see supra* ¶ 1, did not reference gangs. Instead his response focused on how police typically handle drug investigations:

> Drug investigations, they do not stay confined within one city. When drug trafficking organizations are in business, they will deal with anyone all over in any city. It may have been—we have cases that start in our city and move into all different cities around the entire Valley, but, again, with the drug business, it's not contained in one city. We will go outside of our boundaries to investigate drug crimes, which led us to this apartment.

¶7　　　　Here, officers searched the apartment and found a large amount of heroin, cocaine, marijuana, methamphetamine, as well as drug paraphernalia and guns. As a grand jury indicted Chavez on several counts of possession of drugs with the intent to sell, a reasonable jury would not have concluded Detective R.E.'s testimony, even his reference to "drug trafficking organizations," was meant to convey that Chavez was in a gang.

¶8　　　　Finally, Detective R.E. made no reference to gangs in responding to defense counsel's questions regarding the totality of the evidence—questions which actually focused on the reasons why Detective R.E., as the case agent, had not had any of the seized evidence, such as the guns and a glass jar containing marijuana, tested for fingerprints. The exchange was as follows:

> Defense counsel:　Now, knowing that numerous people are in that apartment, knowing that A.V has just left the apartment, knowing that you're the case agent, given that scenario and the totality of what we have listed here now, why don't you take prints?
>
> Detective R.E.:　What's listed there is not the totality.
>
> Defense counsel:　It's the evidence that has come into this case, correct?
>
> Detective R.E.:　There's more—
>
> Defense counsel:　It's a yes or a no. It's the evidence that has come into this case, correct?
>
> Detective R.E.:　That is part of the evidence that has come into this case, what's listed on the white board there.

¶9　　　　First, at best, the jury might have inferred from this exchange the police did not test for fingerprints because they possessed other evidence the State did not introduce at trial. Second, R.E.'s discussion of the case evidence related to his prior testimony, in the State's case-in-chief, in which he had explained that he had not tested the guns or drug paraphernalia for fingerprints because a positive fingerprint match would not have established ownership, and, he believed police had already

obtained sufficient evidence of Chavez's ownership of the seized items because they had found him in the apartment and had uncovered other evidence that he was staying in the apartment. *See supra* ¶ 1 n.1. In light of R.E.'s testimony in this case, this exchange cannot reasonably be construed as suggesting or even intimating Chavez was a gang member.[3]

## CONCLUSION

¶10      For the foregoing reasons, we affirm Chavez's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[3]Because, applying fundamental error review, we conclude there was no error, we do not need to address the State's argument that Chavez invited any error in questioning Detective R.E. *See State v. Moody*, 208 Ariz. 424, 453, ¶ 111, 94 P.3d 1119, 1148 (2004) (defendant invites error by asking a leading question and may not assign the error on appeal) (citation omitted).