NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DUSTIN MICHAEL WOODS, *Appellant.*

No. 1 CA-CR 18-0112
FILED 12-20-2018

Appeal from the Superior Court in Yavapai County
No.  P1300CR201600843
The Honorable Tina R. Ainley, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Elizabeth B. N. Garcia
*Counsel for Appellee*

Law Office of Nicole Countryman, Phoenix
By Nicole Countryman
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge James P. Beene and Judge Michael J. Brown joined.

**M O R S E**, Judge:

**¶1**     Dustin Michael Woods appeals his convictions and sentences for stalking, possession or use of a dangerous drug (methamphetamine), misconduct involving weapons, two counts of aggravated harassment, aggravated assault, three counts of aggravated domestic violence, and possession of drug paraphernalia.  Woods argues that the trial court erred by admitting evidence of his prior domestic violence convictions, and he contends the court should have severed one aggravated harassment and the three aggravated domestic violence counts from the other charges for separate trials.  Woods also challenges the court's decision to try him *in absentia.*  For the reasons that follow, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**     In 2012, Woods and E.W. became acquainted and subsequently lived together as a couple.  The relationship deteriorated, however, and in November 2015, Woods was convicted for a second time that year of a misdemeanor domestic violence assault against E.W.  E.W. stopped seeing Woods "for a while."

**¶3**     Approximately one month after Woods' conviction, he and E.W. at least partially reconciled.  Woods began helping E.W. with construction work at her new home, and occasionally had dinner and spent the night there.  Woods considered E.W.'s home as "his house, too."

**¶4**     On June 7, 2016, E.W. returned home from work later than usual and unexpectedly found Woods inside the house.  Woods demanded to know why E.W. was late, and he became increasingly angry with her. E.W. "start[ed] getting scared because of what had happened prior[,]" and

---

1     We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant. *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

she left to go to a friend's house.  E.W. called the police who informed her "there wasn't really anything they could do to get [Woods] out of the house[] if he's claiming he's living there[.]"

¶5          After almost an hour, E.W., with her friend, returned home to collect her belongings.  E.W. dropped off her friend to wait on the street corner, and as E.W. approached her house alone, she noticed the outdoor lights, which were on when she left an hour earlier, were off.  The front door "was locked from the inside" so E.W. unlocked it, entered the home—which was mostly dark—and proceeded to her bedroom.

¶6          When E.W. was in her room, she heard Woods running towards her from the living room.  Woods grabbed E.W. and "yank[ed] [her] around[.]"  Woods then grabbed E.W. by the hair and threw her face-down on the bed.  Woods covered E.W.'s mouth and nose with his hand so she could not breathe.  E.W. pressed the remote alarm button on her vehicle's ignition key, and hearing the alarm, Woods lifted up E.W. and "slammed" her on her back onto the hardwood floor.  E.W.'s head hit the floor and she "kind of blacked out a little" until she heard "banging" and police officers yelling to open the front door.  Woods ran towards the back of the house, and E.W. let the officers in.

¶7          E.W. told the officers Woods "went out the back[,]" and although the officers searched for Woods, they did not find him.  The officers then documented injuries that E.W. sustained from the physical attack, including bruises to her throat and face and a "really good goose-egg on the back of [her] head[.]"  E.W. went to her friend's house for the evening.

¶8          E.W. returned home the following morning accompanied by police.  She noticed that Woods had been in the house after she left the previous evening.  Officers "cleared the house" and did not find "anything."  E.W. went to work.  She obtained an order of protection ("OOP") against Woods.

¶9          When E.W. and her supervisor went to change the locks on her house later that day, they found Woods sleeping on E.W.'s couch.  E.W. called 9-1-1, and the responding officer discovered Woods feigning sleep in a back room.  The officer arrested Woods and served him with the OOP.

¶10          At some point thereafter, E.W. was vacuuming a hallway in her home when she found a crawl space behind a floor vent containing a pillow, blanket, towel, a "very large" knife, duct tape, and a "large industrial roll of Saran Wrap[.]"  E.W. "thought [Woods] probably was in there" when the police could not find him on June 7.

¶11      Woods subsequently pleaded guilty to misdemeanor domestic violence assault with respect to the June 7, 2016, incident, and he was released from custody on June 15, 2016.  He sent several text messages to E.W. just after midnight on June 16.  Approximately two hours later, E.W.'s barking dogs woke her, and she heard what sounded like someone attempting to remove the screen from her bedroom window.  She also heard Woods talking to her through the window.  E.W. called the police who subsequently located Woods in a nearby tree.

¶12      Six days later, E.W. noticed Woods following her as she drove along the highway.  Woods had also hacked E.W.'s Facebook account and telephoned her, and he sent her more text messages and pictures.  Woods again followed E.W. in his truck on June 25, 2016, when she attended a music festival in downtown Prescott.  Officer Scissons stopped Woods, and Woods fled on foot.  Woods turned to point a handgun at Scissons, and the officer, fearing for his life, "tased" Woods and then detained him.  Upon searching Woods' pockets subsequent to the arrest, Scissons found a usable amount of methamphetamine in a folded five-dollar bill.  Beginning with the June 7 incident, E.W. feared for her life when she encountered Woods.

¶13      Based on the foregoing incidents, the jury found Woods guilty of stalking (fear of death), a domestic violence offense (Count 1); possession or use of a dangerous drug (methamphetamine) (Count 2); misconduct involving weapons (Count 3); two counts of aggravated harassment (one with prior conviction and the other in violation of the OOP) domestic violence offenses (respectively, Counts 4 and 9); aggravated assault, a dangerous offense (Count 5); three counts of aggravated domestic violence (one by interfering with judicial proceedings, one by disorderly conduct, and one by criminal trespass in the third degree) (respectively, Counts 6, 7, and 8); and possession of drug paraphernalia (Count 10).[2]  The jury also found four aggravating factors.  The court subsequently imposed a combination of concurrent and consecutive prison terms totaling 32 years.  Woods timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

---

[2]      The jury returned a not-guilty verdict on one count of burglary in the first degree, and at the State's request, the court dismissed one count of disorderly conduct.

**DISCUSSION**

I.      **Prior Acts Evidence**

**¶14**          Woods challenges the admissibility of his 2015 domestic violence "convictions."[3]  He contends the trial court, by failing to consider the amount of time between the prior conviction and the current charges, abused its discretion in admitting the other-act evidence.  Due to the lapse in time, Woods asserts "nothing about the 2015 assault motivated Appellant to stalk E.W. [and] . . . was the type of propensity evidence that is barred under Rule 403."  Woods demands a new trial.

**¶15**          Woods did not object in superior court to admission of the 2015 conviction; thus, he is entitled to relief only if he can establish fundamental error.[4]  *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005).  Under fundamental error review, defendant bears the burden of proving that: (1) error occurred; (2) the error was fundamental—that it went to the foundation of the case, took from defendant a right essential to his defense, or "was so egregious that he could not possibly have received a fair trial"; and (3) the error was prejudicial.  *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018) (citing *Henderson*,

---

3       The evidence reflects Woods was convicted twice in 2015 for misdemeanor domestic violence assault committed against E.W., once in September regarding an incident that occurred earlier that month, and as noted, E.W. testified about a similar conviction that occurred in November.  On appeal, the parties refer to the 2015 convictions in the singular, and Woods does not specify the date of the conviction that he contends was improperly admitted.  However, Woods refers to a certified copy "of the conviction from 2015" that was admitted into evidence.  Because the referenced exhibit pertains to the September 2015 conviction, we presume Woods challenges that conviction, not the one from November 2015.

4       Woods agreed that incidents of his stalking E.W. in 2015 were admissible under Arizona Rule of Evidence 404(b).  Thus, he arguably invited any error.  *See State v. Pandeli*, 215 Ariz. 514, 528, ¶ 50 (2007) (holding defendant invited error regarding admission of other-act evidence when the trial court asked defense counsel if he objected to the evidence and counsel responded he did not).  Because Woods also fails to argue that the trial court committed fundamental error, we could decline to address this issue.  *State v. Logan*, 200 Ariz. 564, 565-66, ¶ 9 (2001); *State v. Moreno-Medrano*, 218 Ariz. 349, 354, ¶¶ 16-17 (App. 2008).  In our discretion, we elect to address this claim.

210 Ariz. at 567-68, ¶¶ 19, 23, 26). The first step in fundamental error review is determining whether error occurred. *Id.* at 568, ¶ 23.

**¶16** Evidence of other wrongs or acts is not admissible to show character or criminal propensity. Ariz. R. Evid. 404(b). "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

**¶17** The trial court did not err, fundamentally or otherwise. The 2015 conviction was admissible to establish an element of one of the aggravated harassment counts (Count 4) and the aggravated domestic violence counts (Counts 6-8). A.R.S. §§ 13-2921.01(A)(2), -3601.02(A). The 2015 conviction was also relevant to prove Woods' motive and intent in committing the current offenses against E.W. *See State v. Hardy*, 230 Ariz. 281, 289, ¶ 38 (2012) ("Evidence of prior argument with or violence toward a victim is . . . admissible to show motive or intent."). And the passage of time between the 2015 domestic violence incident and the June 2016 episodes goes to the weight of the prior conviction, not its admissibility. *See State v. Fernane*, 185 Ariz. 222, 225 (App. 1995) ("An assertion that a prior act is too different or too remote in time from the charged offense goes to the weight of the evidence, not whether the evidence is relevant and admissible.") (internal quotation marks and citation omitted).

**¶18** Because Woods fails to establish error, the trial court's admission of Woods' 2015 conviction does not entitle him to a new trial.

## II. Severance

**¶19** In a similar argument, Woods asserts the trial court should have *sua sponte* severed Counts 4 and 6-8 from the remaining charges. Because Counts 4 and 6-8 required proof of his prior domestic violence convictions, Woods maintains that trying those counts together with the other domestic violence offenses—stalking (Count 1) and aggravated harassment (Count 9)—was "particularly prejudicial" in that evidence of his prior convictions "implied . . . he must [] be guilty of the acts of domestic violence [offenses] that he was currently on trial for."[5] We review for

---

[5] Woods makes no specific argument regarding what, if any, prejudicial effect evidence relating to Counts 4 and 6-8 had on his convictions for Counts 2, 3, 5, and 10.

fundamental error because Woods did not request severance in the superior court. Ariz. R. Crim. P. 13.4(c); *State v. Laird*, 186 Ariz. 203, 206 (1996).

**¶20** The court did not err, let alone fundamentally so, by failing to sever Counts 4 and 6-8 on its own motion.[6] First, despite Woods' implication to the contrary, the Arizona Rules of Criminal Procedure in effect at the time of his trial did not obligate the court to sever the charges. *See* Ariz. R. Crim. P. 13.4(a) (2017) ("the court may on its own initiative . . . order . . . severance") (emphasis added); *see also* Ariz. R. Crim. P. 13.4(a) cmt. (2017) (noting trial court does not have "a duty to search out all severance issues on its own, for fear of creating fundamental error"); *State v. Longoria*, 123 Ariz. 7, 10 (App. 1979) ("[Rule 13.4(a)] does not require the court to order a severance; it only gives it the discretion to do so on its own initiative.").

**¶21** Second, Counts 4 and 6-8 were properly joined with Counts 1 and 9 for trial. The evidence of aggravated harassment and aggravated domestic violence underlying Counts 4 and 6-8 was admissible to prove that E.W. feared for her life, an element of the stalking charge in Count 1. *See* A.R.S. § 13-2923(a)(2) (elements of stalking). Such evidence was also admissible to establish the aggravated harassment charged in Count 9; namely, that a reasonable person would have felt harassed by Woods' text messages after he was served the OOP, and Woods intended or knew that his conduct was harassing E.W. *See* A.R.S. §§ 13-2921(A), (E) (elements of harassment), -2921.01 (elements of aggravated harassment). Notably, Woods committed all the domestic violence offenses over the course of approximately three weeks for the purpose of instilling fear in E.W. *See State v. Comer*, 165 Ariz. 413, 418 (1990) ("We have permitted joinder of offenses in a single trial where the offenses arose out of a series of connected acts, and the offenses were provable by much the same evidence.").

**¶22** The trial court did not commit fundamental error by failing to *sua sponte* sever Counts 4 and 6-8.

## III. Trial *in Absentia*

**¶23** Woods did not personally appear for trial. The court found Woods waived his right to be present and, over defense counsel's objection, proceeded to try him *in absentia*. Woods challenges the court's decision,

---

[6] Although we could refuse to address this issue because Woods again fails to argue that fundamental error occurred, we exercise our discretion to briefly address the merits.

arguing his absence was involuntary "due to his illness," and thus he had a constitutional right to be present.

¶24 Under the Sixth and Fourteenth Amendments to the United States Constitution and Article 2, Section 24, of the Arizona Constitution, a criminal defendant has a right to be present at trial. *State v. Levato*, 186 Ariz. 441, 443 (1996); *see also* Ariz. R. Crim. P. 19.2 ("A defendant . . . has the right to be present at every stage of the trial, including . . . the impaneling of the jury[.]"). However, a defendant may voluntarily relinquish his or her right to attend trial. *State v. Garcia-Contreras*, 191 Ariz. 144, 147, ¶ 9 (1998). A valid waiver depends upon the voluntariness of the absence. *Id.*

¶25 "The finding of voluntary absence, and, therefore, the existence of a waiver of the right to be present, is basically a question of fact." *State v. Bishop*, 139 Ariz. 567, 569 (1984) (quoting *Brewer v. Raines*, 670 F.2d 117, 120 (9th Cir. 1982)). "The trial court may infer that a defendant's absence is voluntary if the defendant had personal knowledge of the time of the proceeding, his right to be present, and the warning that the proceeding would take place in his absence if he failed to appear." *State v. Muniz-Caudillo*, 185 Ariz. 261, 262 (App. 1996); *see also* Ariz. R. Crim. P. 9.1 ("The court may infer that a defendant's absence is voluntary if the defendant had actual notice of the date and time of the proceeding, notice of the right to be present, and notice that the proceeding would go forward in the defendant's absence."). Once the inference of voluntary absence is raised, a defendant bears the burden of proving his or her absence from trial was involuntary. *State v. Goldsmith*, 112 Ariz. 399, 401 (1975). This Court will not upset a trial court's finding that the defendant's absence was voluntary absent an abuse of discretion. *Bishop*, 139 Ariz. at 569.

¶26 The record indicates Woods voluntarily chose not to be transported from the jail to trial. The day before trial commenced, the court communicated with Woods via video, and he unsuccessfully requested to represent himself. Later that day, Woods personally received a written directive from the court ordering him to appear for trial the following day. The court's order expressly informed Woods that, absent proof that he is "genuinely suffering from a debilitating illness that will prevent him from being able to attend his trial, the trial shall proceed . . . without him." The order further informed Woods that if he refused transportation to court, "he [would] be voluntarily absenting himself from the proceedings[.]" The court instructed jail officials that, should Woods choose to appear at any time during the course of trial, they were to transport him.

¶27 After Woods stated that he was not feeling well and refused transport from the jail on the first trial day, the court learned Woods had not sought medical treatment. The court then found:

> [T]he problem had been, has been made very clear to me through Mr. Woods' behavior and his own statements at the last pre-trial and yesterday that he wishes to continue the trial. . . . [B]ased on victim's rights, it is simply not appropriate to do that at this time. This matter has been continued before. At other times, Mr. Woods has asserted his right to a speedy trial. . . . Mr. Woods has waived his right to be present[.]

¶28 Woods also refused transport from the jail on the trial's second day. In an e-mail exchange with defense counsel, the jail nurse stated: "[Woods] is totally embellishing his symptoms. Clinically, there is no reason he could not handle transport and day in court." Woods refused transport for the remainder of trial.[7]

¶29 Accordingly, the record shows Woods knew his refusal of transport to court would be considered a voluntary absence. Notably, despite Woods' protestations of illness so debilitating he could not attend trial, nothing in the record indicates he requested medical treatment. Woods' failure to seek treatment buttresses the jail nurse's explanation that Woods was "embellishing his symptoms." On this record, Woods fails to rebut the inference that he voluntarily failed to appear for trial. Consequently, the trial court did not abuse its discretion in trying Woods *in absentia.*

## CONCLUSION

¶30 Woods' convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[7] Woods was present, though involuntarily, for sentencing.